KNEELAND VS. THE CITY OF MILWAUKEE.    15    691
60 LRA 362n

The facts in this case, and the opinions filed upon the
original hearing, and also those filed upon granting a motion
for a rehearing, will be found *ante,* pp. 454–474. After the
cause had been re-argued, the court affirmed the decision of
the court below, and the following opinion was filed:

*By the Court,* PAINE, J. Upon an ordinary question, I
should content myself without adding anything to the opin-
ions I have already filed in this case. But the positive con-
viction stated in granting the motion for a re-hearing by
those members of the court who had overruled the Wauke-
sha county case, that it was their duty so far to retrace
their steps as to follow that case, has been assailed by emi-

nent counsel with great earnestness and force, and we have been urged to abide by the decision first announced in this case; and much that they say is so congenial to my own feelings and views as to the duty of courts on constitutional questions, that I desire to state, as briefly as may be, the reasons why I am unable to assent to the conclusions they maintain.

They have not discussed the meaning of the constitutional provision, but have assumed, as they well might, that upon that question we had no doubt. But they have very properly confined themselves to a discussion of the force of the maxim *stare decisis*, upon which alone our decision granting a rehearing was based.

Their positions may be substantially stated as follows:

First. The maxim *stare decisis*, though entitled to great force, is not imperative, but courts may properly review and change a decision once made, if erroneous.

Second. Even if the maxim were to be deemed imperative, we cannot properly assume that any decision was ever made by this court sustaining the validity of the law of 1854, taxing rail and plank roads, for the reason that no opinion was filed in the Waukesha county case.

Third. That upon a constitutional question as to which we have no doubt, we cannot follow a former decision against our present conviction, for the reason that to do so would violate our oath to support the constitution.

As to the first proposition, it is undoubtedly true in the general form in which I have above stated it. Courts frequently do, and perhaps more frequently ought to, review and change their decisions. But because this may properly be done in many cases, it does not follow that it may in all. And without attempting to review or cite cases in detail, I shall simply say that the following positions are fairly to be derived from the authorities, and are clearly supported by reason. First: that the maxim *stare decisis* has greater or less force according to the nature of the question decided; that there are many questions upon which there is no objection to a change of decision, other than grows out of those general considerations which favor certainty and stability in the law.

June Term,
1862.

KNEELAND
v.
THE CITY OF
MILWAUKEE.

These are questions where the decisions did not constitute a business rule, and where a change would invalidate no business transactions conducted upon the faith of the first adjudication. As an illustration, take a case involving personal liberty. A party restrained of his liberty claims to be discharged under some constitutional provision. The court erroneously decides against him. The same question arises again. To change such a decision would destroy no rights acquired in the past. It would only give better protection to rights in the future. The maxim in such a case would be entitled to very little weight, and mere regard for stability ought not to be allowed to prevent a more perfect administration of justice.

But where a decision relates to the validity of certain modes of doing business, which business enters largely into the daily transactions of the people of a state, and a change of decision must necessarily invalidate everything done in the mode prescribed by the first, there when a decision has been once made, and acted on for any considerable length of time, the maxim becomes imperative, and no court is at liberty to change. Take a case involving the validity of certain modes of executing deeds or wills. A decision is made, and the people act upon it for years, executing all such instruments in the manner prescribed. After that, some one raises the question again, and contends that the first decision was erroneous. Admit it to have been so, would the court be justified in overruling it ? Every man, whether lawyer or layman, would answer, No !

It is true that as to such questions it was more a matter of indifference how they were first decided, than as to one like the present, involving a constitutional principle designed to secure so just an end as equality in taxation. And I admit that this fact makes some distinction between the cases, and might justify a struggle to regain the lost ground of constitutional justice, even at the expense of some inconvenience and hardship. But it is equally as true in this case as in those supposed, that the decision constituted a business rule, involving the validity of the entire revenue transactions of the state, and of all the thousands of private contracts

growing out of them; and having been acquiesced in and acted on for such a length of time, the error had passed beyond the reach of judicial remedy. No case can be found where any court ever changed a decision once made, conceding that the change must have such an effect. On the contrary, there are many cases which would almost sustain the proposition, that the practical construction of mere administrative officers, which has been acquiesced in for a long time, without any judicial decision whatever, should in such cases be followed, though in conflict with the constitution. I think that doctrine has been carried too far; but where there has been a judicial decision, the reason upon which it is based then becomes unanswerable.

It is said that in looking at the consequences of a change, to see whether we are at liberty to make it, we are setting aside the constitution upon grounds of policy. Such a charge might be excusable in a layman; I think it is not in a lawyer. The maxim *stare decisis*, it is true, rests upon grounds of policy. But it is equally as true, that the constitution itself intended that that maxim should exist in the judicial system which it established, and should be applied to decisions relating to its own construction as well as to those relating to any other legal questions.

The court, therefore, which follows a decision once made upon a constitutional question, in obedience to this maxim, is no more obnoxious to the charge of setting aside the constitution upon grounds of policy, than if, in obedience to the same maxim, it should follow a decision upon a statutory question contrary to its own views, it would be obnoxious to the charge of disregarding the law on grounds of policy. The court is as clearly bound to enforce the law as it is the constitution. But in giving due effect to the maxim of *stare decisis*, though its own views would be different, it disregards neither the constitution nor the law, for both intended that this maxim should have due effect in the judicial system which they established. The question is, Did the constitution itself intend that each judge should for all time decide upon its own interpretation according to his own views, as though no decision had ever been made, or did it intend

that such decisions once made and acted on by the people so that change would overthrow all the transactions of the past, should be followed by succeeding judges? Obviously the latter. It is not to be expected that any express provision should be found in the constitution enjoining obedience to this maxim. But it was an established, unquestioned principle in the English and American law, and every constitution must be assumed to have contemplated its existence, and to have intended its enforcement. The judge, therefore, who follows a decision once made and so long acted on that a just application of this maxim forbids a change, although his own views of the question, if new, would have been different, is not disregarding the constitution, but obeying it according to its true intent and meaning.

I have thus far assumed that there was a decision of this court sustaining the validity of the law of 1854 taxing rail and plank roads. But it is said that we are not entitled to assume this. And this position is based entirely upon the fact that no written opinion was filed in the Waukesha county case as the statute required. No one is more willing than I am to concede the wisdom of that statutory provision No one regrets more that it was not complied with in that case. But I cannot believe that the statute implies any prohibition against a resort to other sources of information, if such exist, where the court fails to perpetuate the evidence of the grounds of its decision in the manner prescribed. Two of the judges who participated in that decision are still living, one of them still on this bench. One of them was also acting as reporter of the court at the time; and both agree that the court decided that the act of 1854 was not a violation of the constitution. We get this from a written statement of the points decided, made soon after the decision, by the judge then acting as reporter and to whom the duty was assigned of writing the opinion, which statement was sent to one of the counsel in the case for his information; and from the statements of Mr. Justice COLE, now on the bench. Can it be possible that we are forbidden to avail ourselves of information so direct and authentic, as to a former decision of this court? It seems to me clearly not.

Many of the reports which have descended to the present generation as authority, are mere imperfect copies of private memorandums made by lawyers showing the decisions of courts upon which they attended. It is a matter of common occurrence, as appears from the reports, for judges to consult other judges as to decisions previously made, and to act upon such information. Clearly then we may rely upon a written statement made at the time by a judge and the official reporter, and upon the knowledge of another judge still a member of the court.

But it is said there is a discrepancy between the statements of Justices COLE and SMITH as to what the decision was. That of the former is found in his dissenting opinion in the case of *Knowlton v. The Supervisors*, 9 Wis., 429, 430; the latter on page 449. The only discrepancy is, that the statement of Justice SMITH shows that the court did not think that the law of 1854 imposed "a tax within the meaning of the constitutional provisions," while Justice COLE states that they did "not decide that it did not impose a a tax," &c. But this difference is wholly immaterial, inasmuch as both statements show the court held that even if it was a tax, it was no. violation of the rule of uniformity; both show that the law was decided to be no violation of the constitution. This is all that is material for us to know, in giving effect to . the decision as an authority requiring us to sustain the validity of that law, and that is all the effect we do give it.

But it is said that if all other grounds fail, our oaths to support the constitution imperatively require us to determine every constitutional question according to our own views of the true construction of the instrument without regard to previous decisions. The effect of the argument urged upon this point would be to take decisions upon constitutional questions entirely out of the maxim *stare decisis*. Yet I can see no reason for confining it to constitutional questions only. Our oaths faithfully to discharge the duties of our office, as much bind us to sustain the law, as our oaths to support the constitution require us to enforce, that. If, therefore, we must act only upon our own opinions, without re-

gard to previous decisions in the one case, we must do so in both. The correctness of the position depends entirely upon the question whether the constitution itself intended such to be the result of taking an oath to support it. Did it intend to impose upon the conscience of each judge the obligation to support the constitution by construing it always according to his own views, or did it intend that he should support it, giving due effect to previous interpretations by the tribunal established by it as its own interpreter? What I have said shows that, in my opinion, the latter was the clear intention of the constitution. I regard my oath, therefore, as binding me to respect the previous decisions of this court as binding authority, except so far as a just application of the maxim *stare decisis* may leave the court at liberty to review its own decisions.

And no government could long exist under the opposite theory. The confusion and uncertainty arising from it would be intolerable. And the people would be compelled, by a constitutional amendment, to restore this maxim to its proper place.

We are urged by regard for our own reputations for stability to abide by the opinion first announced in this case, and are warned that the confidence of the people is shaken by our vacillation. But for my own part I am more solicitous to be right than to have a reputation of never changing. And whenever I make a mistake, which the proper discharge of my duty requires me to admit and rectify, I hope that no considerations growing out of the probable effect upon my personal reputation may lead me to hesitate for a moment. Such considerations can have no place in determining judicial duty. But even if it were proper for us to act upon them here, I am at a loss to see how our reputation for stability would be re-established by making another change.

I think the decision of the circuit court should be affirmed.