# CASES

## IN THE

# SUPREME COURT OF ALABAMA.

### DECEMBER TERM, 1883.

## Kilgore *v.* The State.

*Indictment for Murder.*

| 74 | 1 |
|---|---|
| 98 | 65 |
| 74 | 1 |
| 99 | 181 |
| 74 | 1 |
| 111 | 5 |
| 74 | 1 |
| 117 | 157 |
| 74 | 1 |
| 129 | 71 |
| 74 | 1 |
| 134 | 111 |

1. *Organization of grand jury.*—In the organization of the grand jury, when less than fifteen of the original *venire* appear, or the number of those appearing is from any cause reduced below fifteen, the court is authorized and required to make an order for the summons of "twice the number of persons required to complete the grand jury" (Code, § 4754); and the court may, in the exercise of this power, order the summons of twice as many persons as are necessary to make the number of grand jurors fifteen, eighteen, or any intermediate number.

2. *Dying declarations; admissibility of.*—Dying declarations should always be received as evidence with the greatest care and caution, and the court should rigorously scrutinize the primary facts upon which their admissibility as evidence depends; but, when these primary facts are clearly and satisfactorily shown—that the deceased was at the time *in extremis,* and that he was under a sense of impending death—the evidence must be received, leaving the jury to decide upon its weight and credibility.

3. *Proof of good character; weight and effect of.*—In all criminal prosecutions, the previous good character of the defendant, having reference and analogy to the subject of the prosecution, is competent and relevant evidence for him as original testimony; but, when the jury, considering the proof of good character in connection with the criminating evidence, are satisfied beyond a reasonable doubt of his guilt, a verdict of guilty ought to follow.

4. *Homicide committed in attempt to rob, ravish, &c.*—A homicide committed in the attempt to perpetrate a robbery, or other felony specified in the statute (Code, § 4295), is murder in the first degree, without any consideration of malice, or a specific intent to kill.

5. *Alibi as defense, and failure to prove it.*—An unsuccessful attempt to prove an *alibi,* in a criminal case, is *not* "always a circumstance of great weight against the prisoner, because the resort to that kind of evidence is an admission of the truth of the facts alleged, and the correctness of the inferences drawn from them, if they remain uncontradicted" (*Porter v. The State,* 55 Ala. 105); yet such failure, like the failure to prove or explain any other material fact, which the defendant had (or is presumed to have had) the means of proving or explaining, is

1

[Kilgore v. The State.]

a circumstance to be weighed and considered by the jury, in determining the question of his guilt

6. *General verdict, on indictment containing two or more counts.*—When an indictment for murder contains two or more counts, differing only in the description of the means or instrument by which the homicide was committed, the jury can not be required to specify in their verdict on which count it is founded.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The indictment in this case contained two counts, charging that the defendant, Sandy Kilgore, a freedman, "unlawfully and with malice aforethought killed John Wesley Hill, *alias* Wesley Hill, by cutting or stabbing him with a knife;" or, as alleged in the second count, "by striking him with some heavy instrument, to the grand jury unknown." There was no objection to the indictment, in the court below, nor to the grand jury by which it was found; but the record shows that, of the seventeen persons summoned as grand jurors, two failed to appear, and two of those appearing were excused by the court; that the court thereupon made an order, directing the sheriff to summon six other persons from the qualified citizens of the county, and that the jury was then completed by drawing three of the six persons so summoned. The defendant pleaded not guilty, and was tried on issue joined on that plea; and he was convicted of murder in the first degree, and sentenced to the penitentiary for life.

On the trial, as appears from the bill of exceptions, the State having proved "that the deceased was stabbed and struck on the head, in front of the residence of Mrs. Cozart, near the city of Montgomery, on the night of June 2d, 1883, between the hours of nine and ten o'clock, and died on the 9th June thereafter," proposed to read as evidence the dying declarations of said Hill, as reduced to writing by John B. Fuller, a justice of the peace, who attended him for that purpose, who testified that, "when he reached said Hill's bed-side, and asked him if he thought he would recover, or get well, Hill replied, '*That is with the doctor;*' that after some conversation, in which witness explained to Hill that he had come to take his dying declaration, and could not take it if he had any hope of recovery, Hill then said that he had no hope of getting well; and that he, witness, then wrote out the statement of the deceased as his dying declaration, sworn to and subscribed," as follows:

"I am aware of my condition, and believe that I can not recover from the injuries received last Saturday night; and I make this dying declaration and statement on oath. On last Saturday night, about nine o'clock or later, while on my way

[Kilgore v. The State.]

home, and when I was in front of Mrs. Cozart's residence, I saw the defendant advancing towards me. I was walking. He told me to halt. I checked my speed, and told him I was going about my business. He advanced to me, and within one yard of me, and cut or struck me on the left side of my head, in the left temple, and thereby cut out my eye, and then cut me in the lip. I retreated, and called for help. The defendant then advanced on me, and struck me on the head with a piece of timber, while I was trying to open the front gate to Mrs. Cozart's premises. I drew my knife after he first cut me, but did not use it, and it was knocked out of my hand when he struck me with the piece of timber. I was senseless after receiving the lick, but soon recovered; and as soon as I got able to realize my condition, I found the defendant cutting me with a knife. He cut me several times, while I was on the ground, and continued to cut me until I was not able to move. He then began to search my pockets, and took five dollars," which were described, and the pocket-book in which the money was. " I was on the ground, and was bleeding freely, and did not see the defendant when he left. I never saw him before that night. I do not know where he lives. I saw him this evening in charge of Capt. Gerald and Policemen Payne and Carter. I recognize him as the person who assaulted and robbed me. I can't be mistaken about the defendant being the person. I am positive he is the man. It was not too dark at the time for me to recognize a man one yard off, and I know that he is the person who assaulted me."

Dr. Blue, a practicing physician, who was called to see the deceased the night he was assaulted, described the wounds, and declared his opinion that the deceased died from the effect of them; and he further testified, also, "that he called to see the deceased every day from the 3d to the 9th June, and some-times two or three times per day, and tried to encourage him, but could not succeed in arousing the slightest hope of his recovery; that the deceased frequently spoke of his condition, and expressed the belief that he would die from the effect of the wounds, and never once expressed any hope of his recovery; that he was in a stupor most of the time, as if he had taken morphine, but, when aroused, was conversing and intelligent; that said Hill, when witness first visited him, seemed to be especially uneasy about the two cuts on his face, one above the eye, and the other on the lip, lest they might cause scars; that he had been assured they were not serious, and would soon be well; that while he (witness) told the deceased his wounds were dangerous, he never told him they were fatal, but at all times gave him such encouragement as would tend to keep him in a hopeful and cheerful condition; and that he was the only

[Kilgore v. The State.]

patient, in all his professional experience, in whom he had not been able to infuse some hope." On this evidence, the court admitted the dying declarations as evidence; and the defendant excepted to their admission.

Two other witnesses for the State, negro women, who were attracted to the spot by the cries of the deceased, testified that they saw a man walking rapidly away; and they identified the defendant as that man, though they had never seen him before; and though it was proved that the night was too dark to enable a person to recognize any one at a considerable distance. "The evidence on the part of the defendant tended to·show that, on the night of the stabbing, he was at the 'Dollar Store' in the city of Montgomery, between nine and ten o'clock; that his wife lived at the house of Mrs. Cozart, but he did not live with her; that he was a stranger in Montgomery, and boarded temporarily with one Sarah Williams; that he came to her house, on the night of the stabbing, about eleven o'clock, and asked admission; and that she admitted him, after some hesitation,·and sent him into the kitchen. Sarah Williams testified that, after the defendant got into the kitchen, he asked for a light and· some water, both of which she furnished him; that he asked for a second pan of water, and she gave it to him, and, having some curiosity to know why he wanted two pans of water, she peeped through an opening into the kitchen, and saw him scrubbing his shirt and clothes; that he slept in the kitchen all night, and on the next morning asked to lie down on her bed for a while, and she permitted him to do so; that when she came into the room, a short time afterwards, the defendant was gone, and that she discovered a shirt between the mattresses of the bed," which was produced, and identified by .the witness, "and which was, she swore, the shirt defendant wore the day before the killing; and that when she asked the defendant about his using the two pans of water, he said that his nose had been bleeding, and also that he had spilt some medicine on his clothes. There was evidence, also, tending to show that there were small stains of blood on the wristbands of said shirt, and that the defendant, when arrested, had some blood on the front part of his coat; and there was, also, evidence tending to show that, when he was arrested, one of his fingers had the appearance of having been recently cut." The evidence showed, also, that the house of said Sarah Williams was on Madison street in the north-eastern part of the city of Montgomery, more than a mile distant from the residence of Mrs. Cozart, which was at the extreme southern end of Perry street, outside of the city limits. Several witnesses for the·defendant testified "that he was a man of good· character."

[Kilgore v. The State.]

The above being "substantially all the evidence," the court charged the jury, on the request of the solicitor, 1st, "that if they are satisfied beyond a reasonable doubt of the guilt of the defendant, from all the evidence in the case, good character included, then they should find him guilty, notwithstanding he may have proved good character;" 2d, "that if the jury believe from the evidence, beyond a reasonable doubt, that the defendant killed John Wesley Hill, in this county, and before the finding of this indictment, in the perpetration or attempt to perpetrate a robbery, then they should find him guilty of murder in the first degree;" 3d, "that an unsuccessful attempt to prove an *alibi*, in a criminal case, is a circumstance to be weighed against the defendant." The defendant excepted to each of these charges, and requested the following charges, which were in writing: 1st, "that though the jury should believe, from the evidence, that the defendant did cut and strike said Hill, and thereby inflict wounds from which he afterwards died, yet, if they are not also positively convinced, beyond a reasonable doubt, that he did so willfully, deliberately, maliciously, and with premeditation, he can not be found guilty as charged in the indictment;" 2d, "that the jury, if they find the defendant guilty, must state in their verdict on which count or counts they so find him guilty." The court refused each of these charges, and the defendant excepted to their refusal.

WATTS & SON, for the appellant.—(1.) The record shows a fatal defect in the organization of the grand jury. If fifteen of the number originally summoned had appeared and been accepted, the court would have had no power at all to add to their number, fifteen being a competent grand jury.—*Berry v. The State*, 63 Ala. 126. When less than fifteen appear and are accepted, the court is authorized and required to make an order for the summoning of "twice the number of persons required to complete the grand jury." (Code, § 4754); that is, twice the number necessary to complete it; and fifteen being a full and complete grand jury, twice the number below fifteen must be the number to be summoned to supply the deficiency, and any excess above that is unauthorized. (2.) Dying declarations, to be admissible as evidence, must be made at the very point of death, and when the declarant is fully conscious of impending dissolution.—*Morgan v. The State*, 31 Ind. 193; *McDaniel v. The State*, 8 S. & M. 401; *Brown v. The State*, 32 Miss. 433; *Com. v. Roberts*, 108 Mass. 296; *State v. Ferguson*, 2 Hill, S. C. 282; *State v. Tilghman*, 11 Ired. 513; *Starkey v. People*, 17 Ill. 17; *State v. Center*, 35 Vt. 378; *Moore v. The State*, 12 Ala. 764; *McHugh v. The State*, 31

Ala. 317; *Reynolds v. The State*, 68 Ala. 502; 1 Greenl. Ev. § 158; *Walker v. The State*, 52 Ala. 192. Here, the evidence only shows that the declarant expressed the belief "that he could not recover from the wounds" which he had received, and that he was especially afraid that scars might be left on his face, although he had been assured that the wounds on his face were not serious; and that he declared his recovery depended on the doctor, who never told him that his wounds were fatal. This falls far short of that sense of impending death which makes such declarations competent evidence. (3.) An unsuccessful attempt to prove an *alibi* is entitled to no greater weight against the accused, than his failure to prove any other fact material to his defense; though the rule may be different, where there is a fraudulent attempt to prove an *alibi*. *Collins v. State*, 20 Iowa, 85; *Miller v. People*, 39 Ill. 457; *Taber v. State*, 16 Ohio St. 583; *White v. State*, 31 Ind. 262; *Adams v. State*, 42 Ind. 373; *State v. Josey*, 64 N. C. 56; *Williams v. State*, 47 Ala. 659; *Spencer v. State*, 50 Ala. 124; *Porter v. State*, 55 Ala. 95. The charge of the court, on this point, invades the province of the jury, in assuming that there was an unsuccessful attempt to prove an *alibi.—Bank v. Jones*, 59 Ala. 123.

H. C. TOMPKINS, Attorney-General, for the State.—(1.) A grand jury may consist of fifteen, eighteen, or any intermediate number of persons; and when the number of those originally summoned is reduced below fifteen, the court has a discretionary power, within the two extremes, as to the number to be summoned.— *Yancey v. The State*, 63 Ala. 141. (2.) The declarations of the deceased were properly admitted.—*McLean v. The State*, 16 Ala. 672; *Oliver v. The State*, 17 Ala. 587; *Johnson v. The State*, 47 Ala. 1; *Faire v. The State*, 58 Ala. 74; *Green v. The State*, 66 Ala. 40. (3.) The charge of the court asserts that an unsuccessful attempt to prove an *alibi*, like an unsuccessful attempt to prove any other material fact, is a circumstance to be weighed against the defendant; and this is a correct proposition.—*Porter v. The State*, 55 Ala. 95; *Com. v. Costly*, 118 Mass. 1; Burrill's Cir. Ev. 519. (4.) A homicide committed in the attempt to rob, or to perpetrate any other one of the felonies specified in the statute, is declared murder in the first degree.—Code, § 4295; *Mitchell v. The State*, 60 Ala. 26; 1 Leigh, Va. 610. (5.) The jury had the right to return a general verdict of guilty, without specifying the count on which their verdict was founded.—Clark's Manual, § 2525.

BRICKELL, C. J.—1. The objections to the formation of

the grand jury are not well taken. It was organized, impanelled and sworn, in conformity to the statute.—Code of 1876, § 4754. Fifteen only of the original *venire* having appeared, and two of them being excused from service, the contingency existed in which the court had power, and it became a duty, to complete the jury, by ordering the summons of a sufficient number of qualified citizens to supply the deficiency. In the exercise of this power, the court could order a summons of only such number as would increase the jury to fifteen, or of such number as would increase it to eighteen, or to an intervening number, as in its discretion was deemed best for the administration of justice. Either number would, under the statute, complete the grand jury when impanelled and sworn, and the selection of either is not an excess of the power conferred upon the court.— *Yancey v. The State*, 63 Ala. 141.

2. There was no error in admitting the dying declarations of the deceased. The matter of these declarations was, the circumstances under which the injuries of which the deceased was languishing had been inflicted, and the person by whom they were inflicted. They were made when he was *in extremis*, and when he was conscious that from the injuries he must die. From the day he suffered them, to the day of his death, uniformly he expressed the belief and expectation that from them he must die, and all the efforts of his medical attendant to encourage or inspire a hope of recovery were unavailing. This species of testimony should always be received with the greatest caution, and most rigorously should the courts scrutinize the primary facts upon which its admissibility is authorized. But, when the two facts upon which the law authorizes its introduction are satisfactorily and clearly shown—the fact that at the time of making the declarations the deceased was in extremity, and under a sense of impending death, that he was without hope of life—they must be received, leaving to the jury, who must pronounce upon their weight, all infirmative considerations affecting their credibility.—*Moore v. State*, 12 Ala. 764; *McLean v. State*, 16 Ala. 672; *Oliver v. State*, 17 Ala. 587; *McHugh v. State*, 31 Ala. 317; *Mose v. State*, 35 Ala. 421; *Faire v. State*, 58 Ala. 74.

3. In all criminal prosecutions, whether for felony, or for misdemeanor, the previous good character of the accused, having reference and analogy to the subject of the prosecution, is competent and relevant as original testimony; it is a fact which must be submitted to the jury, and ought to be considered by them in determining whether he is guilty of the offense with which he is charged. But, if, when the good character is shown, and it is considered in connection with the evidence criminating the accused, the jury are persuaded beyond a reasonable doubt

of his guilt, a verdict of conviction ought to follow; and it is this proposition which is embodied in the charge given by the City Court, to which the second exception of the appellant refers.

4. A homicide, committed in the attempt to perpetrate either of the felonies, arson, rape, robbery or burglary, is by the statute pronounced murder in the first degree.—Code of 1876, § 4295. The criminal intent, which is involved in the attempt to commit either of these felonies, gives complexion to, and determines the character of the killing which may be consequent. It supplies the place of "malice aforethought" of the common law, the essential and distinguishing characteristic of murder, and of the specific intent to take life, or the "willful, deliberate, malicious and premeditated killing," which is the element of one class of homicides the statute denounces and punishes as murder in the first degree.—*Fields v. State*, 52 Ala. 348; *Mitchell v. State*, 60 Ala. 26; *People v. Sanchez*, 24 Cal. 17. The charge given by the City Court on this point was free from error, and that requested by the appellant was properly refused.

5. A deliberate consideration of the evidence introduced by the prosecution, criminating or tending to criminate the appellant, can but lead a candid mind to the conclusion, that he ought to give, if he would resist its force, an account of his whereabouts at the time the injuries were inflicted upon the deceased, or of some other fact which would lessen the force of the circumstances, and of the facts pressing against him. If he attempt explanation, or contradiction, or an account of himself at the time when the crime was committed, and the explanation or contradiction is not successful or satisfactory, or the account given of himself can not be accepted as true, the jury will weigh these facts against him; not as absolute or conclusive of guilt, but as influential, and as tending to corroborate the criminating evidence. The general proposition is true, that upon the prosecution rests the burden of proving the guilt of the defendant, and of proving it beyond a reasonable doubt; and that he is not under a duty of establishing his innocence; yet, if he assumes to give explanations of his conduct, or to account for his absence from the scene of crime, or to prove any fact resting in his own knowledge, and of which, if it exists, he must have the peculiar means of proof, and fails, the fact of failure must be weighed or considered in determining his guilt. Its value, and the importance which should be attached to it, depend upon the character of the criminating evidence, and is for the determination of the jury.

In *Porter v. State*, 55 Ala. 107, the court said: "An attempt to prove any material fact, followed by a failure, is a circum-

[McAnally v. The State.]

stance to be weighed against the party making it." There are authorities pronouncing that "an unsuccessful attempt to establish an *alibi* is always a circumstance of great weight against a prisoner, because the resort to that kind of evidence implies an admission of the truth and relevancy of the facts alleged, and the correctness of the inferences drawn from them, if they remain uncontradicted."—Wills Cir. Ev. 83; Burrill's Cir. Ev. 519. This doctrine was expressly repudiated in *Porter v. State, supra*, and the failure to make the proof was declared no more than a circumstance to be weighed against the prisoner, as would be the fact that he left unexplained or uncontradicted any other criminating circumstance he had, or is presumed to have, the means of explaining or contradicting.—*Gordon v. People*, 33 N. Y. 501. We find no error in the charge of the City Court, touching the failure of the defendant to prove an *alibi.*

6. There was no error in the refusal to instruct the jury, that by the verdict they must specify upon which of the two counts of the indictment they found the defendant guilty. Each count is in form sufficient, and the only difference is in the description of the means by which the unlawful and malicious killing was perpetrated. When the several counts of an indictment are in proper legal form, and relate to a single offense, and a conviction upon either requires the same judgment and the same sentence as a conviction upon all would, a general verdict is all that the law requires.—*State v. Wright*, 53 Me. 328; *Commonwealth v. Desmarteau*, 16 Gray, 1; *Jackson v. State*, at present term.

We find no error in the record, and the judgment must be affirmed.