JACOB A. DANIELS, plaintiff below, plaintiff in error, *vs.* STATE OF DELAWARE, defendant below, defendant in error.

*Writ of Error—Criminal Law—Charging Jury—Stare Decisis— Character Evidence.*

1. It is not error for the Court to refuse to instruct the jury under a request which assumes the existence of a fact to be established by evidence.

2. The rule *stare decisis* has for its object the salutary effect of uniformity, certainty and stability in the law.

3. The decisions of the Court of Oyer and Terminer and the Court of General Sessions were not reviewable by the Supreme Court prior to the adoption of the Constitution of 1897, and they will not be departed from by the Supreme Court unless it be satisfied that they are clearly erroneous.

4. The doctrine of *stare decisis* applies with peculiar force to decisions respecting real property, vested rights, and those matters of general commercial importance which tend to influence future business transactions; but questions, as where personal liberty is involved, will be met by considerations which favor certainty and stability in the law.

5. The question respecting the proper relation of character evidence to the other evidence in the case does not involve any of those essentially important rights and interests favored by the doctrine of precedents.

6. While character evidence is not a defense, it is a circumstance in the antecedent conduct and habits of the accused, its purpose being to strengthen the legal presumption of innocence.

7. Character evidence is to be weighed and estimated by the jury according to the weight of the testimony by which it is supported in connection with that to which it is opposed.

(*Jan. 16, 1901.*)

NICHOLSON, Ch., and PENNEWILL and BOYCE, J. J., sitting.

*Josiah Marvel* and *William S. Hilles* for plaintiff in error.

*Peter L. Cooper, Jr.,* Deputy Attorney-General, for the State.

Supreme Court, January Term, 1901.

WRIT OF ERROR to the Court of General Sessions for New Castle County (No. 18, November Term, 1899).

BOYCE, J.:—Jacob A. Daniels, the plaintiff in error, was tried and convicted in the Court below upon the charge of unlawfully and lewdly and lasciviously playing with Viola Yeatman, a female child, under the age of sixteen years.

There are seven assignments of error. The second, third and fifth are directed to the refusal of the Court to charge the jury as requested by the second and third prayers, and to the instruction by the Court to the jury instead, respectively. And they were considered together in the argument. They present the main subject of controversy in this case. This being so, it renders a discussion of the remaining errors assigned unnecessary, although we may say that upon a careful consideration of each of them in connection with the evidence produced, and the law applicable to the case, they should not be sustained.

The third error assigned is directed to the third prayer requested, which was properly refused by the Court in that it assumed a fact; *i. e.,* "the defendant being a man of good character"— which, under the evidence in this case, was a question exclusively for the determination of the jury.

It remains, therefore, to consider:

(1) The refusal by the Court to instruct the jury as requested by the second prayer, to wit:

"The jury should take into consideration the evidence of the witnesses as to the good character of the defendant as of any other substantive fact tending to establish the defendant's innocence or guilt, and if after considering it in connection with all the other

evidence in the case they have a reasonable doubt of his guilt, they should return a verdict of not guilty."

(2)   The instruction which was given by the Court to the jury instead, to wit: " We have also been asked to charge you as to the matter of good reputation.   We will say that when good character is proved, and the evidence is doubtful, hanging in the scales as it were, so that you do not know which way to decide it, in such a case good reputation when proved, should enure to the acquittal of the defendant.     But when the testimony is positive and distinct and the offense is clearly and satisfactorily proved, good reputation is of little value.     Good men sometimes fall, and men who have borne a good reputation, and have never before, perhaps, done a bad act, even these sometimes in the erratic working of human nature commit crimes, so that we say that evidence of good reputation is only available in cases of doubt; even then it must be proved to your satisfaction."

It is the correctness of this instruction as a rule of law that is disputed.

We will first review the reported cases in this State bearing upon the subject.   And it may be said that there has not been an unvarying, uniform rule with regard to the weight and value of character evidence in the courts of this State.   The doctrine that "proof of good character is available only in doubtful cases "   *   *   *   and that "the reputation for good character, however excellent and irreproachable, should not be allowed to weigh against positive, direct and uncontradicted evidence,"—following the evident intent and meaning of the instruction given to the jury in the case of the *State vs. Manlove, 1 Houst. Crim. Cas., 208–217,* was, for the first time, unequivocally and unmistakably laid down in the case of the *State vs. Vines, 1 Houst. Crim. Cas., 424–431.*   The case of the *State vs. Williamson, 1 Houst. Crim. Cas., 155–164,* seems to be the first reported case in this State in which the jury were instructed by the Court upon the subject of character evidence.   And the instruction given is not so clear in its

meaning and effect as the instructions upon the same question contained in the two cases which have just been cited. The language of the Court is as follows:

"If, however, the jury should not be satisfied from the evidence beyond a reasonable doubt that such was the case, they should acquit the prisoner, for he would be entitled to the benefit of any reasonable doubt they might have that such were the facts of the case, and should they entertain such doubt, the proof of his good character should determine that doubt and the question of his guilt or innocence of the crime charged against him in his favor." The language employed in the charge would seem to indicate that the evidence of good character was submitted to the jury together with the other evidence without any qualification or disparagement, and that the jury were left untrammelled to determine upon the whole evidence in the case, whether, or not, they entertained "a reasonable doubt." It is true that they were told that "should they entertain such a doubt, the proof of his good character should determine that doubt." Without criticising the instruction or commenting upon its uselessness, because of the familiar rule in criminal law that, "a reasonable doubt" enures to the acquittal of the accused, it will be observed that the instruction as given, did not restrict the evidence of good character, and its availability, to "doubtful cases." In an earlier case than any which we have as yet cited, being the case of the *State vs. Horskin, 1 Houst. Crim. Cas., 116*, it is said in the statement of the case that " the character of the prisoner, as a peaceable and quiet man was proved by several witnesses called in reply." The Court did not allude to this evidence in the charge, the concluding part of which is as follows : "The evidence, however, was before them, and it was for them alone to decide what were the facts and circumstances proved in the case. * * * * * They should give the prisoner, however, the benefit of any reasonable doubt they might have in the case." The evidence of good character, therefore, seems to have been submitted to the jury in connection with the other evidence as any other fact or circumstance in the case.

In the case of the *State vs. Horner and Spring, 1 Marvel, 504–516,* decided in 1893, the Court departed from the general language used in the first two cases cited above and also that used in the subsequent cases which were followed substantially by the Court below, to express the rule with regard to character evidence. The Court said, "If from the testimony as presented by the other witnesses you are in doubt as to the guilt of the accused, then you may take into consideration the evidence of the witnesses as to their good character." Thus excluding from the consideration of the jury the evidence of such character until they should first determine whether they had a doubt as to the guilt of the accused upon the other evidence, which is the effect of the instruction given by the Court below upon the evidence of good character in the present case. But the Court added: "And you may consider whether it is more likely under all the circumstances of this case that Jerry Sullivan should be testifying to untruths, than that the defendants, being men of good character, should be guilty of the offense with which they are charged." Thus manifestly leaving the jury under this branch of the instruction to consider the evidence of good character in connection with the testimony of the principal witness, without that discrimination contained either in the first part thereof or in the instruction given by the Court below in the present case. And the jury were left to consider the evidence of good character as a circumstance in the case in connection with the testimony of the principal witness, and to determine whether it was more likely that the latter had testified falsely than that the defendants, if the jury should find that the evidence sustained their good character, should be guilty of the offense charged. It, therefore, appears from a close examination of the reported decisions in this State that the rulings of the Court respecting character evidence have not been altogether uniform; yet it is, nevertheless, true that the charge of the Court below has the authority of precedent.

*State vs. Manlove, Supra ; State vs. Lynch, 9 Houst., 588, 597 ; State vs. Brown, et. al., 2 Marvel, 401; State vs. Davis, 2 Pennewill, 139–142.*

And because of these former decisions in support of the instruction which was given in this case, the Deputy Attorney-General, representing the State, invoked the doctrine of *stare decisis* against a reversal of the the case at bar.

Before the adoption of the Constitution in 1897, vesting this Court with the jurisdiction to issue writs of error to the Court of Oyer and Terminer, and to the Court of General Sessions, and to determine all matters in error, the last named courts were each, within their respective criminal jurisdictions, courts of last resort, possessing original and final jurisdiction in all those criminal matters, vested in them, without any supervisory or appellate control of a higher Court.    And the decisions of said courts, touching the weight and availability of character evidence, which were followed by the Court below, constitute the only barrier to an examination *de novo* of the relation of such evidence to the other evidence in the case.

The salutary effect of uniformity, certainty and stability in the law, and the perplexing difficulties and inconvenience to the public, were it otherwise, are the chief reasons for the doctrine of precedents.    And we may say that the decisions heretofore deliberately made by our criminal courts, recognized and confirmed as many of them have been by subsequent decisions made therein, appeal to this tribunal with its enlarged jurisdiction, with peculiar force, and they should not be disregarded lightly, nor will this Court depart from any of these unless it be satisfied that they are clearly erroneous, and that to sustain them would be to perpetuate error.

The doctrine of *stare decisis* has recently been discussed and applied by this Court in the case of *Truxton vs. Fait & Slagle Co., 1 Pennewill, 483*. The Court, by Ridgely, Judge, said: "The maxim of *stare decisis* has generally been strictly applied where titles to real estate have been acquired or commercial usages have been established under decisions of the Court." * * * * * "But where a decision contravenes a plain principle of law, or where in such decision, the law has been misunderstood or misapplied, and a

reversal will not disturb property rights already acquired, or make innovations on established commercial usages, it may then become the duty of the Judges to reverse an erroneous decision of the same Court."

Chancellor Kent says: "Even a series of decisions are not always conclusive evidence of what is law; and the revision of a decision very often resolves itself into a mere question of expediency, depending upon the consideration of the importance of certainty in the rule and the extent of property to be affected by a change of it." *1 Kent's Com., 476.*

The rule *stare decisis* seems to apply with peculiar force to decisions which have determined questions respecting real property and vested rights, and it embraces as well those matters of general commercial importance which tend to influence future business transactions. It has been said that the doctrine has greater or less force according to the nature of the question decided. Those questions where the decisions do not constitute a business rule, *e. g.*, as where personal liberty is involved, will be met only by the general consideration which favors certainty and stability in the law. *Downer vs. Miller, et. al., 15 Wis., 691.*

An examination into the question respecting the proper relation of character evidence when admitted to any other evidence in the case, although a rule touching such evidence has been established by former decisions in our criminal courts, does not involve any of those essentially important rights and interests, whether public or private, which are especially favored by *stare decisis*; and this Court is not bound to adhere to the rule, which was followed by the Court below, if upon an investigation it be found to be manifestly erroneous in that it contravenes a plain principle of the law of evidence. And, therefore, we may proceed to consider the main question now before us:—Is proof of good character a fact or circumstance in the particular case for the consideration of the jury in connection with all the other evidence produced, or is it

available only in cases where the jury are in doubt of the guilt of the accused upon the other evidence?

It may be said at the outset that character evidence is not a defense. It is a circumstance in the antecedent conduct and habits of the accused, the object and possible effect of which, when proved, is to strengthen the presumption of innocence with which the law clothes every person charged with the commission of a crime; and such evidence will vary in force and value according to the other facts and circumstances surrounding each particular case.

*Harrington vs. State, 19 Ohio St., 264; People vs. Ashe, 44 Cal., 268.*

Historically speaking, the admissibility of evidence of good character, or reputation as it is sometimes called, was at first restricted to capital cases only, but it is now settled law that the accused may put his character in issue or not, in all criminal prosecutions where punishment for the offense charged is the purpose thereof.

*2 Starkie on Ev., 7 Am. Ed., \*304; 3 Greenleaf on Ev., Sec., 25.*

And in the earlier cases, the weight of such evidence was limited to cases of doubt as to the guilt or innocence of the accused upon the other evidence. This doctrine, adhered to by the Court below in this case, obtains in a few of the jurisdictions in this country; and it has been said that the practice of so charging juries, both here and in England, undoubtedly grew up when judges were accustomed to express their opinions to juries upon the weight and effect of testimony.

*Com. vs. Leonard, 140 Mass., 473; State vs. Henry, 5 Jones, (N. C.) 65.*

Text writers in this country, as well as in England, are quite in accord in criticising this doctrine as a rule of law, maintaining that it is illogical, and not consonant with sound reasoning.

Mr. Greenleaf, in his treatise on Evidence, says: "The admissibility of this evidence has sometimes been restricted to doubtful

cases, but it is conceived that if the evidence is at all relevant to the issue, it is not for the judge to decide before the evidence is all exhibited, whether the case is, in fact, doubtful or not, nor indeed afterward; the weight of the evidence being a question for the jury alone."

*3 Greenleaf on Ev., Sec. 25.*

Sir William Russell says: " It has been usual to treat the good character of the party accused as evidence to be taken into consideration only in doubtful cases. Juries have generally been told that where the facts proved are such as to satisfy their minds of the guilt of the party, character, however execellent, is no subject for their consideration, but when they entertain any doubt as to the guilt of the party, they may properly turn their attention to the good character which he has received. It is, however, submitted with deference, that the good character of the party accused, when satisfactorily established by competent witnesses, is an *ingredient* which ought *always* to be submitted to the consideration of the jury, together with the other facts and circumstances of the case. The matter of the charge, and the evidence by which it is supported, will often render such ingredients of little or no avail, but the more correct course seems to be not in any case to withdraw it from consideration, but to leave the jury to form their own conclusion upon the evidence, whether an individual whose character was previously unblemished, has, or has not, committed the particular crime for which he is called upon to answer."

*2 Russ. on Crim. and Mis., 704.*

And the celebrated English lawyer (afterwards an eminent jurist) Mr. Sergeant Talfour, commenting on this passage from Russell on Crimes, said :—" We may be permitted to add that according to the language frequently adopted by judges in their charges, it may be proved that character is, in no case, of any value. They say that in a clear case character has no weight, but if the case be doubtful—if the scale hangs even—the jury ought to throw the weight of the character into the scale and allow it to turn the

balance in the prisoner's favor; but the same judge will tell juries that in every doubtful case they ought to acquit, stopping far short of the even balance, and that the prisoner is entitled to the benefit of every reasonable doubt; in clear cases, therefore, the character is of no avail, and in doubtful cases it is not wanted; it is never to be considered by the jury but when the jury would acquit without it. The sophism lies in the absolute division of cases into clear and doubtful without considering character as an ingredient which may render that doubtful which would otherwise be clear. There may certainly be cases so made out that no character can make them doubtful, but there may be others in which evidence given against a person without character would amount to conviction, in which a high character would produce a reasonable doubt, nay, in which character will actually outweigh evidence which might otherwise appear conclusive. It is in truth a fact varying greatly in its own intrinsic value, according to the proofs to which it is opposed, but always a fact, fit, like all other facts proved in the cause, to be weighed and estimated by the jury."

*Dicken. Quar. Session, 6th Ed., 563. (Wharton's Crim. Ev., 9th Ed., Sec. 66.)*

Without multiplying citations from law writers, further reference is made to: *Best's Prin. of Ev. (By Chamberlayne) Am. Ed. (7th Eng.) Sec. 362; Bish. Crim. Proc. (3rd Ed.), Sec. 115; 5 Am., & Eng. Ency. of Law (2nd Ed.), 267, &c.; 11 Enc. Plead. & Prac., 336; and Gilbert on Ind. and Col. Ev., 298.*

There is also an overwhelming weight of authority to be found in the adjudicated cases in support of the doctrine which, as we have shown, at much length, is maintained by the text writers.

In the case of the *State vs. Daly, 53 Vt., 442,* the Court, quoting from *1 Starkie on Ev., 75,* that character evidence "ought never to have *any* weight except in a doubtful case" said, "if this is law, all such evidence might as well be excluded; for if the case is doubtful before its introduction (and that is the undoubted meaning of the quotation) the respondent is entitled to an acquittal

without it; if the jury have a reasonable doubt of the prisoner's guilt, it is their duty to acquit; hence the evidence becomes unnecessary; and if Mr. Starkie is correct in his proposition when the case is not doubtful upon the other evidence, it is not entitled to any weight, and so would be needlessly in the case."

And Judge Cooley, in the case of the *People vs. Garbutt, 17 Mich., 9,* quoting the same passage from Mr. Starkie said, "Such instructions are calculated to mislead. Good character is an important fact with every man.  *  *  *  In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and being in, the jury have a right to give it such weight as they think it entitled to."

In the case of the *State vs. Henry, 5 Jones, (N. C. Law) 66,* the Court said, "It is not a rule of law that, in a plain case the jury must not consider the evidence of the prisoner's good character, and that it is only in a doubtful case that he has a right to have it cast into the scales and weighed in his behalf"  *  *  *. "The true rule is that the testimony is to go to the jury and be considered by them in connection with all the other facts and circumstances, and if they believe the accused to be guilty, they must so find, notwithstanding his good character."

A dictum in the case of the *People vs. Stewart, 28, Cal., 396,* to the effect that "after the evidence is all in the Court may as a matter of law, instruct the jury that evidence as to previous good character is not entitled to any weight except in doubtful cases," was rejected in the case of the *People vs. Ashe, 44 Cal., 288,* the Court saying: "The good character of the prisoner when proven is itself a fact in the case—it is a circumstance tending in a greater or less degree to establish his innocence, and is not to be put aside by the jury, in order to ascertain if the other facts and circumstances considered by themselves do not establish his guilt beyond a reasonable doubt."

In the case of *Com. vs. Hardy, 2 Mass., 303,* it was held that "in doubtful cases a good general character clearly established

ought to have weight with a jury; but it ought not to prevail against the positive testimony of credible witnesses." And in the celebrated case of *Com. vs. Webster, 59 Mass., 259*, a distinction was drawn between accusations of "great and atrocious criminality" and those of "smaller offenses", and it was said "against facts strongly proven, good character cannot avail"; but in smaller offenses, such as "pilfering and stealing", where the evidence is doubtful, proof of character may be given with good effect." Both of these decisions were disapproved in the case of *Com. vs. Leonard, 140 Mass., 473*, and the Court said, "It is not now the law, we think, that evidence of character can only be considered by the jury where the other evidence is doubtful * * * and we think it (the old practice of charging juries, that evidence of character was of little or no weight, except in doubtful cases) ought not to have been made a rule of universal application, that is, a rule of law."

Without citing at length from other numerous adjudicated cases, we refer to a few of them:

*State vs. Northrup, 48 Iowa, 583; Com vs. Wilson, 152 Mass., 12; Harrington vs. State, 19. Ohio St., 264; Felix vs. State, 18 Ala., 720; State vs. House, 108 Iowa, 68; People vs. Hughson, 154, N. Y., 153; Remsen vs. People, 43 N. Y., 8; Maclin vs. State, 44 Ark., 115; State vs. Sauer, 38 Minn., 438; Edgington vs. U. S., 164 U. S., 361.*

The doctrine of the instruction which, because of the preponderance of the adjudicated cases by our courts respecting evidence of good character, was consistently and naturally followed by the Court below, is sophistical and illogical; and its inconsistency is clearly demonstrated by the distinguished law writers and jurists whom we have quoted, perhaps, at too great length. The effect of the doctrine is first to exclude from the jury the consideration of the evidence of good character, although permitted to go before them as competent testimony, until they shall have determined whether they are in doubt as to the guilt of the accused upon the

other evidence; in which event the jury are told, as in this case, that "good reputation, when proved, should enure to the acquittal of the defendant," the misleading character of which is obvious; and it is coupled with another objection equally misleading and erroneous; it is, "when the testimony is positive and distinct and the offense is clearly and satisfactorily proved, good reputation is of little value." The effect of the instruction is to make character evidence unnecessary and useless under the first branch thereof; and of no avail under the latter part. Such evidence, therefore, might as well be excluded altogether. We think that it is something more than "a mere make weight in doubtful cases"; and that proof of an unblemished character may under all the facts and circumstances of the particular case create a doubt in the minds of the jury, when, without it, they would have no doubt; and that it is, at least, a circumstance in every case, when proved, to be weighed and estimated by the jury according to the weight of the testimony by which it is supported in connection with that to which it is opposed.

The serious matter of reversing a series of former decisions in order to reach a correct rule of law is our justification for the time and space which we have occupied in our effort to present sound and convincing reasons therefor.

We are unanimously of the opinion that there was error in the instruction as given, and we, therefore, reverse the judgment, and remand the case to the Court below.

Judgment below reversed.