(116 So. 706).

### GARRISON v. STATE. (8 Div. 651.)

Court of Appeals of Alabama.   March 27, 1928.

Rehearing Granted April 24, 1928.

For answer by Supreme Court to certified question, see 217 Ala. 322, 116 So. 705.

Almon & Almon, of Decatur, for appellant.

Charlie C. McCall, Atty. Gen., for the State.
Brief did not reach the Reporter.

SAMFORD, J. The evidence for the state tended to prove defendant guilty under both counts of the indictment, hence charges 1, 3, and 4 were properly refused.

■ The criminal jurisdiction of the state extends and covers all federal forest reservations lying and being in this state, and for that reason charge 2 was properly refused.

Refused charge 5 is as follows:

"I charge you that the defendant has offered you evidence of his previous good character. This you should take into consideration along with all the other evidence in the case. A man whose previous character is shown by the evidence to have been good, is presumed by law less likely to have violated the law than one whose character is not so shown."

In this case the defendant was charged with manufacturing whiskey, an act affecting the general morals of the state. He proved a good general character and a good character for not "making or dealing in whiskey." This court in Elliott v. State, 111 So. 762,[1] without citation of authority held such a charge as above quoted to be good. In the instant case the trial judge refused the charge and thus presents it again for review.

Since the case of Felix v. State, 18 Ala. 720, in all criminal cases, evidence of previous good character is proper for the consideration of the jury, not only where a doubt exists upon the other proof, but even to generate a doubt as to the guilt of the accused. Prior to that decision evidence of good character was only received in cases of doubt. In the Felix Case, however, it was settled in this state that: "The good character of the party accused, satisfactorily established by competent witnesses is an ingredient" to be considered by the jury, "together with the other facts and circumstances of the case." The decision

[1] Ante, p. 32.

in the Felix Case, supra, has been consistently followed, and now may be said to be the fixed rule in this state. In Daniels v. State, 2 Pennewill (Del.) 586, 48 A. 196, 54 L. R. A. 286, the court after citing and quoting from many adjudicated cases concludes:

"We think that it [good character] is something more than 'a mere make weight in doubtful cases;' and that proof of an unblemished character may, under all the facts and circumstances of the particular case, create a doubt in the minds of the jury, when without it they would have no doubt."

There are many decisions of the courts of this state fixing it as a rule that:

"In all criminal prosecutions, whether for felony or for misdemeanor, the previous good character of the accused, having reference and analogy to the subject of the prosecution, is competent and relevant as original testimony; it is a fact which must be submitted to the jury, and ought to be considered by them in determining whether he is guilty of the offense with which he is charged. But if, when the good character is shown, and it is considered in connection with the evidence criminating the accused, the jury are persuaded beyond a reasonable doubt of his guilt, a verdict of conviction ought to follow." Kilgore v. State, 74 Ala. 1.

Previous good character does not in any sense constitute an excuse, a defense or a justification for crime, nor as a matter of law raise a reasonable doubt of guilt. It goes to the jury for its consideration, along with all the other evidence in the case in determining the general question of guilt or innocence. 16 Corpus Juris, 584 (1129).

Why then is the fact of good character submitted to the jury? Certainly not without some definite rule by which they are to weigh and determine its value as evidence. It can be only upon the assumption, inference, or presumption that if the defendant has established a good character generally and specially as to the crime charged, he would be less likely to have committed the crime than one whose character was not so shown.

In a criminal case there is no presumption that a defendant has either a good or a bad character. It is an important fact to be proven in the trial of the case in relation to the crime charged, and when good character is established by evidence it becomes his most valuable asset for the purpose of showing or assisting to show. (1) To disprove the commission of the offense. (2) To rebut the evidence of presumption of criminal intent. (3) To show the probability of mistake or falsehood on the part of the witnesses for the prosecution. (4) For the purpose of raising a doubt as to guilt when considered in connection with other evidence, where such doubt would not otherwise exist. All text-writers and decisions now recognize the value of good character as evidence. Wharton's Criminal Law, vol. 1, p. 536. "A good name is rather to be chosen

446

than great riches" is a maxim so long established as to be recognized by all men and in all climes. The law recognizes it and makes of it substantive evidence in favor of its possessor to protect his name, when otherwise he would fail. This evidence of good character is given to the jury, not in a haphazard chaotic manner to be accepted, considered, or rejected at their caprice or whim, but to be considered as directed by law, i. e. that it is assumed, inferred, presumed, that a man of good character is less likely to violate the law than one who has not such a character.

And why should such fact not be presumed by the law. It was recognized by Solomon more than 25 centuries ago, it was incorporated into and recognized as a part of the common law of England in the reign of Charles II. Reddick v. State, 25 Fla. 112, 433, 5 So. 704. It is recognized as "a principle" in our jurisprudence in Cauley v. State, 92 Ala. 71, 72, 9 So. 456, where the court said:

"Good character may generate a reasonable doubt of guilt upon the *principle*, that it is unlikely that a person of good character would commit the act charged."

Again in Morgan v. State, 88 Ala. 223, 224, 6 So. 761, the court speaking through McClellan, J., said:

"The object and effect of such evidence [good character] is to disprove guilt, by furnishing a *presumption* [italics ours] that the defendant would not have committed the offense."

We but follow a maxim when we say that the legal presumption is what everybody accepts as a fact.

The crime charged in this indictment was one against the general moral welfare condemned by the Constitution of the nation, and the laws of the state and nation, and a man who has proven a good moral character ought to have the benefit of his most valuable asset in aid of a defense not merely as a fact to be accepted or rejected at the whim of the jury, but to be considered as a part of the evidence with its legal presumption.

The foregoing expresses the views of the writer as to refused charge 5, but the judges of this court being unable to reach an unanimous conclusion as to said charge, the question was submitted to the Supreme Court for decision to which inquiry is the following response:

"Sayre, J. The charge inquired about was properly refused to the defendant in the case out of which the certified question arises.

"Character means reputation, or the general credit which a man has obtained in public opinion. Hussey v. State, 87 Ala. 121, 130, 6 So. 420. Proof of the good character of the defendant in a criminal case is permitted for the reason that it is a circumstance that aids the inference of innocence, and this court has held that good character proved is to be considered by the jury in connection with the whole evidence in the case; 'but its value, intrinsic or relative, will vary according to the proof to which it is opposed, and in connection with which it must be weighed and estimated by the jury.' Armor v. State, 63 Ala. 176. The likelihood, the probability, that a man of good character has not violated the law depends upon an inference of fact to be drawn by the jury upon consideration of the evidence; there is no presumption of law one way or the other, nor can the court be required to instruct the jury otherwise.

"Let this be certified to the Court of Appeals. "Anderson, C. J., Gardner and Bouldin, JJ., concur."

Whether the opinion is convincing or not it binds this court as to the conclusion. It follows that the refusal of charge 5 is held not to constitute error.

It follows also that on this point the case of Elliott v. State, ante, p. 32, 111 So. 762, is overruled.

Refused charge 6 is clearly an argument.

There being no error in the record the judgment is affirmed.

Affirmed.

### On Rehearing.

With a full realization and appreciation of the decisions of this court which consistently hold that in prohibition cases, as well as in all the other criminal prosecutions, there should not be convictions unless and until the state has met the burden of proof resting upon it, I am still of the opinion that the facts and circumstances surrounding the parties are sufficient to go to the jury, and if believed beyond a reasonable doubt to form the basis of a verdict of guilt. However, after reading and considering the entire record en banc, my brothers are of a different opinion, and think that there is not sufficient evidence to warrant a conviction for the unlawful possession of a still, and as to that count of the indictment the general charge should have been given as requested by the defendant. Realizing that dissenting opinions, especially upon conclusions of fact, are of little value, I refrain from forcing a decision by a divided court.

It follows that the application for rehearing is granted, the affirmance is set aside, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.