## FELIX, A SLAVE, *vs.* THE STATE.

1. A charge, " that although, *in general*, mere words might not be sufficient provocation to reduce the crime of murder to manslaughter, yet the jury were the judges whether the provocation, if more than by mere words, was sufficient," should be refused, as calculated to mislead the jury—1st Because it leaves them to infer that *mere words* may in *some* cases thus reduce the offence. 2d. Because it assumes that it is not the province of the court, but of the jury, to pass upon the legal sufficiency of the provocation. 3d. Because, there being uncontradicted evidence of express malice, no degree of provocation could extenuate the offence, and the charge, in that view of the case, was inapplicable to the facts.

2. In criminal cases, evidence of previous good character is proper for the consideration of the jury, not only where a doubt exists upon the other proof, but even to generate a doubt as to the guilt of the accused.

3. In an indictment for murder, the designation of the person slain as a free *negro*, though unnecessary, is matter of description and must be proved as alleged; and proof that he was a mulatto will not sustain the allegation.

ERROR to the City Court of Mobile. Tried before the Hon. Alex. McKinstry.

HAMILTON & BELSER, for the plaintiff in error:

1. The general rule is, that words are not sufficient to reduce a killing to manslaughter. But to this, there are exceptions, and in the prisoner's case, the jury from the whole evidence, should have been permitted by the court below to say whether the prisoner's case furnished one of the exceptions.—United States v. Meltberger, 3 Wash. C. C. Rep. 515 ; Regina v. Fisher, 8 C. & Payne, 182; Rex v. Rodgers, Roscoe's Ev., 683; Archb. 323-5; 1 Russ. on Cr. 458-87 ; Foster's Crown Law, 295 ; Wharton's Cr. Law, 237-8-43; People v. Ryan, 2 Wheeler's Cr. Cases, 54; Rex v. Broome, 3 C. & Payne, 120 ; Ib. 234. The whole of the evidence, disclosed in the bill of exceptions, shows that the case before the court was one of mutual contest, and where this appears, usually the killing amounts to no more than manslaughter.—1 East. P. C. 244-5; 1 Hale, P. C. 456; Foster's Cr. Law, 295 ; Rex v. Ayes, Russ. & Ryan, 166 ; Rex v. Haywood, 6 C. & Payne 157 ; Regina v. Canniff, 9 ib. 359 ; Whart. Cr. Law, 243 ; State v. Norris, 1 Haywood, 429.

2. Testimony as to the general character of the prisoner

Felix, a slave, v. The State.

should be admitted in all criminal prosecutions, but more particularly in capital cases. The qualification given by the court restricted the inquiries of the jury within too narrow a compass. Com. v. Hardy, 2 Mass. 316-18; State v. Wells, 1 Cox N. J. Rep. 42; People v. Vane, 12 Wend. 78; 1 Phil. Ev., 177; ib. Cowen & Hill's notes, 341-2; 2 Russ. on Cr. 704; United States v. Freeman, 4 Mason, 510; Freeland's Case, 1 C. H. Recorder, 82-3; Queensley v. State, 3 Stew. & Port. 308.

3. The fourth charge asked for by the prisoner's counsel, should not have been refused by the court.—Thurman v. The State, 18 Ala., not yet reported; 1 Greenl. Ev., 65; 1 Starkie on Ev., 374. Proof of the person killed must correspond with the allegations of the indictment.—Archb. 36; ib. 315.

4th. The refusal to give the fourth charge asked for amounts to charging the jury, that if the person deceased was a mulatto, then he was also a negro. The proof was that the deceased was a mulatto—the indictment charges that he was a free negro. There is no statuatory punishment prescribed for the murder of a mulatto by a slave, but there is one for manslaughter in such a case.—Clay's Dig. 472, § 7; ib. 472, § 2, in case of killing a white person. How is a slave to be punished for murdering a mulatto? Is he to be punished under the penal code or at common law, without reference to it? If by the latter, all the rules of the common law must apply. The indictment goes farther than necessary in describing the deceased. Having made the unnecessary allegation, the State is bound by it.—1 Greenl. Ev., 65; 1 Starkie on Ev., 374.

Attorney General, for the State.

CHILTON, J.—The prisoner was indicted in the City Court of Mobile for the murder of one Francis Saturnina, otherwise called Spanish Frank, a free negro, and was found guilty by the verdict of the jury, and sentenced by the court to be hanged; but, as upon the trial, novel and difficult points arose, which the judge thought should be refered to this court, the sentence of death was suspended until the 10th day of February next, to await the decision of this court, to be had in the mean time.

It appears that at a ball for colored persons given in Mobile,

a short time before the indictment was found, the deceased was a manager, and the prisoner, though uninvited, attended and took part in a musical band, as a performer on the bass drum; that the ball continued until about two in the morning, up to which time there had been no disturbance, but that shortly before its close, the deceased and prisoner had some words, when the deceased reminded the prisoner that he was there without an invitation, and consequently ought to be the last person to make a fuss; that after the interchange of words, they came violently together; and that one Thomas Lorant, a free person of color, and the witness by whom this proof was made, interfered and separated them, and took hold of the prisoner, telling him not to make a fuss, to which the prisoner replied, "I have no complaint against you Thomas, but as to Frank, I will kill him to-night." This took place in a negro shanty, as it is called, composed of two rooms. Lorant states that he was immediately after this called into the other room to take a drink, having left Felix apparently much excited, but before the liquor was poured out, he heard some one cry out that Frank was dying; that he returned and found him stabbed, apparently with a dirk or knife, of which the deceased died almost immediately. Another witness testified that the deceased took hold of the prisoner and forced him out of the back door, and others forced him from thence out of the back gate, which was thereupon bolted, and as the deceased was starting home and was standing at the front gate, the prisoner, according to one witness, ran around the fence from the direction of the back gate, but, according to another, came through the fence, by an aperture made from a plank's being off, and as he passed the deceased, struck him one blow saying with an oath, "take that." The deceased said he was badly hurt, was taken into the house, and immediately died.

The prisoner introduced two witnesses, who swore that up to the time of this occurrence he had borne an exceedingly good and peaceable character, and that he was of a very quiet and peaceable disposition. It appeared also that the deceased was a bright mulatto.

This was the substance of the evidence, and the prisoner's counsel asked the court to charge the jury as follows:—

1. That although, in general, mere words might not be sufficient provocation to reduce the crime of murder to manslaught-

er, yet the jury were the judges whether the provocation, if more than by mere words, was sufficient. This charge was refused.

2. That the jury were entitled to consider the evidence of the good character of the prisoner, as one of the circumstances of the case, and to take it into consideration in making up their minds as to the degree of the offence. This charge was given, with the qualification, that the jury could not consider the evidence of good character, unless they were in doubt upon the other proof.

3. That unless the State had shown that a free negro, named Francis Saturnina, alias Spanish Frank, was killed by the prisoner, with malice aforethought, the jury could not find him guilty as charged. This charge was given—and

4th. That being a free mulatto will not make the prisoner a free negro. This last charge was refused; and the questions arising upon these charges are refered for our decision.

1. The first charge, we think, was properly refused. It is certainly objectionable, as liable to mislead the jury from its verbiage. That although, *in general, mere words* might not be sufficient provocation to reduce the crime of murder to manslaughter, &c., would imply that this was only true as a general rule, but allowed of exceptions, and the jury would thus have been left to determine whether this did not constitute such exception. It is laid down by the most approved authors on criminal law, that "words of reproach, how grievous soever, are not a provocation sufficient to free the party killing from the charge of murder, and neither are provoking actions and questions, without an assault."—Roscoe's Cr. Ev., 683, marg.; Fost. 290; 1 Hawk. Pl. Cr. chap. 31, § 33; 1 Hale, 455. Mr. Russell says, "no affront by bare words or gestures, however false and malicious, and aggravated with the most provoking circumstances, will free the party killing from the guilt of murder."—1 Russ. 434-5; Whart. Crim. Law, 234, and cases cited in note *y.*; see also, Archb. Cr. Pl. 417, marg. page. But we think the charge is liable to a still more serious objection, when applied to the facts of this case. There is no conflict of testimony upon the point, that the killing must have been effected by means of a deadly weapon. It is also clear that a period of time elapsed between the provocation, whatever it was, and the killing. It

was further in proof that the prisoner said he would take the life of the deceased that night. Now, considering the charge in view of these facts, it is manifest that it was calculated to mislead the jury, as it also, in effect, forestalled the court, in declaring the law as applicable to the true facts of the case. However great may have been the provocation, still if it was brought about by the prisoner as a pretext for the killing, it will not avail him; neither would any degree of provocation extenuate the act, if it be the result of a cool, deliberate judgment and previous malignity of heart. As then there was evidence in this cause, tending to show express malice, and that the prisoner may not have been influenced, so much by sudden phrensy resulting from provocation, as by a settled purpose of revenge, in killing the deceased, the court did right in reserving to itself the province of declaring to the jury the law as to what would constitute a sufficient provocation, or whether, if certain facts had been proved to their satisfaction, any provocation would extenuate the guilt of the prisoner and reduce the offence from murder to manslaughter. The jury are the judges, whether the provocation is sufficient, when applied to, and tested by the law, as given them in charge by the court, but in no other sense. Suppose the alleged provocation had been given an hour or a day previous to the killing, and the party had deliberately set about preparing the means for taking the life of the deceased, is it not too clear for argument that a charge, like the one here asked, if proper in any case, would be altogether improper in the case supposed? The law carefully distinguishes between a sudden transport of passion, which springs instantaneously from what it allows as a sufficient provocation and which prompts to an immediate act of violence, and a purpose of revenge, which usually follows such passion. In the first case, in condescension to the frailty of our nature, the law allows the provocation to extenuate a homicide committed at the instant from murder to manslaughter. In the other, the provocation, furnishing an incentive to revenge, so far from extenuating the crime, is a circumstance to be looked to as evidence of malice, and especially would this be so, if the prisoner, in consequence of the provocation, had made threats against the life of the deceased.

Again, we have seen that a provocation may be "by more than mere words," and yet the law would hold it altogether in-

sufficient. To hold that when the evidence shows such a state of case, the jury are the judges of its sufficiency, would be to make them the judges of the law, which is not the case. They have power to find against the law, and the State is remediless, as no new trial can be granted at its instance, but this is but an abuse of their prerogative, and not the legitimate exercise of a right.—See Pierson v. The State, 12 Ala. 149.

2. We come next to consider the second charge, as qualified by the court. The charge as qualified has in most cases been stated as the law, and juries have usually been told that they could only look to the character of the accused for the purpose of turning the scale in doubtful cases. We think, however, that such is not the law. We are of opinion that evidence of the general character of the accused, having reference and analogy to the subject of the charge, is competent as original testimony—as a circumstance to be considered in determining whether he is guilty of the crime alleged against him—and may be considered, in connection with the other facts and circumstances, even to generate a doubt in the minds of the jury. To hold that a man's general good character is only evidence, in cases where there is doubt, is equivalent to holding that he shall derive no benefit from it as evidence in a criminal case; for if the jury entertain a reasonable doubt as to his guilt, they will give him the benefit of such doubt and acquit, aside from proof of his good character; so that according to the doctrine of the charge, which, we concede, seems to be supported by many and respectable authorities, a person accused could only avail himself of the benefit of his good character in cases in which he would be acquitted had such proof not been offered. We think the rule in such cases correctly laid down in 2 Russ. by Greaves, 786, and in Roscoe's Cr. Ev., (ed. of 1846,) 97, where it is said, "that the good character of the party accused, satisfactorily established by competent witnesses, is an ingredient, which ought always to be submitted to the consideration of the jury, together with the other facts and circumstances of the case. The nature of the charge, and the evidence by which it is supported, will often render such ingredient of little or no avail; but the more correct course seems to be, *not in any case to withdraw it from consideration, but to leave the jury to form their conclusion upon the whole of the evidence,* whether an individual,

whose character was previously unblemished, has or has not committed the particular crime for which he is called upon to answer." We think this places the rule upon sensible and intelligible ground, and we feel no hesitation in adopting it. As the charge of the court excluded from the jury the consideration of the evidence offered of the prisoner's peaceable, quiet character, unless they were in doubt upon the other proof, we we think it misconceived the law, and constitutes an error for which the judgment must be reversed.

3. As to the supposed variance, it is only necessary to remark, that although it was not necessary to have described the party slain as a free negro, yet having so designated him in the indictment, it becomes matter of description, and must be proved as alleged. Mr. Greenleaf lays down the rule thus; "If the averment is divisible, and enough is proved to constitute the offence charged, it is no variance, though the remaining allegations be not proved. But where a person or thing, necessary to be mentioned in an indictment, is described with unnecessary particularity, all the circumstances of the description must be proved, for they are all essential to the identity." The example put is an indictment for stealing a *black* horse; the animal is necessarily mentioned, but the color need not have been stated; yet, if avered, it becomes matter of description, and must be proved.—1 Greenl. Ev., § 65; 1 Starkie's Ev., 374. In the case before us the deceased is described as a free *negro*. The word negro, meaning a *black* man descended from the black race of Southern Africa, is not understood in common parlance to mean a mulatto, and our statutes seem to take the distinction between them. We do not think a bright mulatto, as the deceased was shown to have been, fills the description of a negro. This can of course be remedied by an additional count in the indictment.

Upon a full consideration of this case, we are unanimous in the opinion that for the errors pointed out, the judgment of the City Court must be reversed.