(84 South. 272)

CALDWELL v. STATE. (7 Div. 18.)

(Supreme Court of Alabama. June 30, 1919. On Rehearing, Oct. 23, 1919.)

1. CRIMINAL LAW ☞315—GRAND JURY PRESUMED TO CONTINUE FOR THE TERM UNLESS DISSOLVED.

Under Gen. Acts 1909, p. 312, § 18, and Gen. Acts 1915, p. 812, § 13, authorizing the circuit court to impanel grand jury for the half yearly term of the court, a grand jury once regularly impaneled is presumed to continue until dissolved by operation of law at the end of the term or by an order of the court.

2. CRIMINAL LAW ☞400(2) — DISSOLUTION OF GRAND JURY BEFORE END OF TERM CAN BE SHOWN ONLY BY RECORD.

An order dissolving the grand jury before the end of the term can be shown only by the record of the court, and evidence that the grand jury made a report in which they requested to be discharged is not sufficient to show that they were discharged.

3. COURTS ☞64(2) — SPECIAL JURY SESSION HELD AUTHORIZED.

Under Gen. Acts 1915, p. 708, § 2, authorizing call of causes on dockets for trial at the times fixed by the law and at such other times fixed by order as may be necessary to secure prompt trial of prisoners, the circuit court had authority on the first day of a half-year term to enter an order convening a special jury session of the court.

4. COURTS ☞64(6)—ORDER CALLING SPECIAL SESSION HELD NOT TO PREVENT TRIAL OF PROSECUTION NOT YET AT ISSUE.

An order calling a special jury session of circuit to try causes pending and at issue does

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

not limit the court to try cases not yet at issue when the order was entered, in view of the court's duty to afford prompt trials of prisoners.

5. COURTS ☞64(6)—CAN DISREGARD ORDER LIMITING TRIAL TO CASES THEN AT ISSUE.

An order for a special jury session which limited the cases triable to those then at issue can be disregarded by the court making the order so as to afford prompt trial of prisoners as required by statute.

6. JURY ☞82(2)—DRAWING 20 DAYS BEFORE TERM IS NOT MANDATORY.

Under the express terms of Gen. Acts 1909, p. 317, § 29, the provision of section 15 of the act for drawing of jury 20 days before beginning of the term is not mandatory, and the time at which they are drawn does not affect the legality of the panel.

7. JURY ☞82(2)—FAILURE TO SUMMON ONE JUROR DOES NOT INVALIDATE PANEL.

Under the express provision of Gen. Acts 1909, p. 320, § 32, the failure of the sheriff to summon one juror drawn for service does not require quashing the venire, and it will be presumed that failure to serve such juror was not due to breach of duty by the sheriff.

8. JURY ☞109 — COURT CAN EXCUSE JUROR FOR SUFFICIENT CAUSE.

Under Acts 1909, p. 319, it is within the legal power of the court to excuse a juror for cause regarded as sufficient by the court.

9. CRIMINAL LAW ☞603(9)—DENIAL OF CONTINUANCE FOR ABSENCE OF WITNESS HELD NOT AN ABUSE OF DISCRETION.

It was not an abuse of discretion for the court to deny a motion for the continuance of criminal cases because of the absence of an eye witness whom the defendant had not yet been able to locate, where the motion merely stated that he might be at the camp now.

10. CRIMINAL LAW ☞600(1)—CONTINUANCE MAY BE DENIED WHERE TESTIMONY OF ABSENT WITNESS IS ADMITTED.

A motion for continuance of a criminal case on account of absence of a witness was properly overruled, where the court allowed defendant to make a showing for the witness, and it was admitted on the trial.

11. CRIMINAL LAW ☞365(1)—WITNESS SHOT IN SAME AFFRAY CAN EXHIBIT WOUND TO JURY.

In prosecution for murder, a witness who was shot in same affray and by the same person as shot defendant may, in connection with his testimony, exhibit to the jury the place where he was shot; this being part of the res gestæ.

12. HOMICIDE ☞171(1)—WITNESS CAN STATE POSITION IN WHICH DEFENDANT HELD PISTOL.

In a prosecution for murder, a witness can state the position in which defendant held the pistol when he did the shooting.

13. CRIMINAL LAW ☞683(2)—COURTS HAVE WIDE DISCRETION IN PERMITTING REBUTTAL EXAMINATION.

Trial courts are invested with wide discretion in permitting examinations in rebuttal of evidence theretofore given in criminal cases.

14. HOMICIDE ☞171(1)—ALL CIRCUMSTANCES ATTENDANT UPON SHOOTING ARE ADMISSIBLE.

In a prosecution for the murder of a street car conductor by a passenger who had been ejected by conductor and motorman, all circumstances attending the shooting, including the action of the conductor, the motorman, and the defendant were properly admitted in evidence.

15. HOMICIDE ☞170—EVIDENCE CONCERNING SHARPSHOOTER'S MEDAL WORN BY ACCUSED HELD COMPETENT FOR IDENTIFICATION.

Where the shooting was done by a soldier in uniform whose identity at the time was uncertain, evidence that the man who did the shooting wore a sharpshooter's medal, and remarks by accused when in custody with reference to his possession of such a medal and his losing it, were competent as aids to identification.

16. CRIMINAL LAW ☞1170½(2)—OVERRULING OBJECTION THAT QUESTION CALLED FOR CONCLUSION HELD CURED BY ANSWER.

Error, if any, in overruling objection by accused that the question whether accused followed deceased out of car called for the conclusion, was not material, where the witness answered that he did not know which one followed the other.

17. CRIMINAL LAW ☞829(1)—REFUSAL OF REQUESTS COVERED BY CHARGE NOT ERROR.

Under the express provision of Gen. Acts 1915, p. 815, the refusal of charges requested by accused is not error, if they were substantially covered by the oral charge of the court and by special charges given at the instance of accused.

18. HOMICIDE ☞146 — MALICE PRESUMED FROM INTENTIONAL USE OF DEADLY WEAPON.

Malice may be presumed from the intentional use of a deadly weapon, unless the evidence which proves the killing rebuts that presumption.

19. HOMICIDE ☞14(2) — PREMEDITATION AND DELIBERATION NEED BE ONLY MOMENTARY.

Premeditation and deliberation in law of homicide do not require reflection for an appreciable length of time, but it is sufficient if it exists only for a moment at the instant of time the slayer is pressing the trigger to fire the fatal shot.

20. HOMICIDE ☞11, 22(2)—MALICIOUS KILLING EVEN IN PASSION IS "MURDER"; PREMEDITATION AND DELIBERATION MAKE CRIME "MURDER IN FIRST DEGREE."

If the killing is malicious, it is "murder," even if it is done in heat of passion excited by sufficient provocation; and, if it is also pre-

meditated and deliberate, it is "murder in first degree."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Murder; Murder in First Degree.]

21. HOMICIDE ⬬116(4) — DANGER MUST BE REAL OR APPARENT TO AUTHORIZE KILLING.

To authorize taking of human life, there must be real danger of death or serious bodily harm, or the appearance of danger, such as to produce in the mind of a reasonable man the honest belief that there was danger of death or serious bodily harm.

22. HOMICIDE ⬬118(1)—SOLDIER IN UNIFORM NOT EXEMPTED FROM DUTY TO RETREAT.

The fact that the slayer was a soldier in uniform, who had been trained not to retreat, does not entitle him to any modification of the ordinary rule requiring retreat in certain circumstances before taking of life is justified.

23. HOMICIDE ⬬309(1)—REQUESTED INSTRUCTION AS TO MANSLAUGHTER NOT EXCEPTING MALICIOUS KILLING PROPERLY REFUSED.

Charges requested by accused that if the killing was in the heat of passion, induced by a blow, he could be convicted only of manslaughter, were properly refused as omitting the exceptions making the killing murder if it was malicious even though in heat of passion.

24. HOMICIDE ⬬45—WORDS ARE NOT SUFFICIENT PROVOCATION.

Words of reproach, however grievous, are not a provocation sufficient to free a party taking life from the charge of murder.

## On Rehearing.

25. HOMICIDE ⬬308(3)—EVIDENCE HELD TO JUSTIFY SUBMITTING ISSUE OF MURDER TO JURY.

In a prosecution for the killing of a street car conductor by one whom he had ejected from the car and who thereafter drew a concealed pistol and shot the conductor and motorman, evidence held sufficient to justify submitting to the jury the issues of murder in the first and second degree as well as the issue of manslaughter.

26. CRIMINAL LAW ⬬1160—DENIAL OF NEW TRIAL CANNOT BE REVIEWED UNLESS VERDICT IS CLEARLY WRONG.

Under Gen. Acts 1915, p. 722, amending the statute allowing a review of denials of new trials in civil cases so as to include criminal prosecutions also, the review in a criminal prosecution is governed by the same rules as in a civil cause, and the denial of a new trial because the verdict was contrary to the evidence which the trial court heard will not be reviewed unless the evidence clearly convinces the court that the verdict is wrong and unjust.

27. HOMICIDE ⬬44 — INSTRUCTION AS TO KILLING IN HEAT OF PASSION ENGENDERED BY BLOW CORRECT.

Instructions that if killing was not malicious and was not premeditated, but was the result of heat of passion reasonably engendered by a blow at the time of difficulty, the defendant could not be convicted of murder in either degree, were correct.

28. HOMICIDE ⬬22(1)—KILLING BY ASSAILANT WITH WEAPON PREVIOUSLY CONCEALED IS FIRST DEGREE MURDER.

Under Code 1907, § 7086, making the killing in an affray by the assailant by the use of deadly weapon concealed before the commencement of the fight murder in the first degree, a street car passenger, who drew a previously concealed weapon and shot the conductor after he had been ejected by conductor and the motorman following an assault which he provoked, could be convicted of first degree murder.

29. CRIMINAL LAW ⬬925½(4)—NEW TRIAL FOR PUBLIC PREJUDICE HELD PROPERLY DENIED.

A new trial on ground of public prejudice against accused was properly denied, where there was no evidence that the jurors read the newspaper articles objected to and they were cautioned by the court against prejudice, and no motion for change of venue had been made.

30. STATUTES ⬬124(1)—PROVISIONS FOR IMPANELING JURY HELD WITHIN TITLE.

Gen. Acts 1915, p. 812, § 13, authorizing circuit court to impanel grand juries and to reassemble them, is within the title of that act to further prescribe the duties and powers of circuit judges.

31. HOMICIDE ⬬118(1)—STREET CAR PASSENGER IS NOT EXEMPTED FROM DUTY TO RETREAT BEFORE KILLING CONDUCTOR.

A passenger in a street car is not in a place of refuge as he would be in his own home, and is not excused from the duty to retreat before killing the conductor who ejected him from the car.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

Edgar C. Caldwell was convicted of murder in the first degree and sentenced to death, and he appeals. Affirmed, and application for rehearing overruled.

The facts sufficiently appear from the opinion of the court, as do most of the excepted-to portions and of the court's oral charge. Special requests refused to the defendant, Nos. 5, 6, 10, 11, 12, 17, 19, and 20, are charges relieving the defendant of guilt of murder in the first or second degree, in case he killed the deceased under adequate provocation causing anger or thirst of blood. In charge 12 the court charges the jury that, if they believe from the evidence that the passion of the defendant was suddenly aroused by a blow struck or threatened by the deceased, at the time of the killing, and that said killing was the direct result of said blow, this would as a matter of law reduce the case to manslaughter, and the jury could not return a verdict of murder in either the first or second degree.

(This cause was passed upon by the United States Supreme Court on habeas corpus.)

Charles D. Kline, of Anniston, and B. M. Allen, of Birmingham, for appellant. Neither the judge nor the court have inherent power to impanel and organize the grand jury. 51 Ala. 25; 63 Ala. 59. The grand jury was not drawn according to section 7257, Code 1907, nor according to Acts 1909, p. 305. The court improperly drew the petit jury to try this case. Authorities supra; ante, 219, 82 South. 469. The court was in error in its oral charge. 52 Ala. 526; 94 Ala. 55, 10 South. 522; 202 Ala. 804, 80 South. 804; (Tex. Cr. R.) 55 S. W. 573; 58 Pa. 9. The court erred in refusing charges 5, 6, 10, 11, 12, 17, 19, and 20. 60 Ala. 1; (Ky.) 86 S. W. 534; 74 Mo. 207; 92 Ga. 16, 18 S. E. 301; 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456; Wharton on Homicide, 322, and authorities there cited.

J. Q. Smith, Atty. Gen., Horace Wilkinson, Asst. Atty. Gen., and Knox, Acker, Dixon & Sterne, of Anniston, for appellee. There was no error relative to the grand or petit jury. Acts 1915, 707 and 812; Acts 1909, 312; Morgan v. State, 8 Ala. App. 174, 63 South. 21; section 3249, Code 1907; 175 Ala. 1, 57 South. 857; 184 Ala. 16, 63 South. 1000. There was no error in the admission or rejection of evidence. The exceptions to the oral charge of the court were without merit. 129 Ala. 23, 30 South. 348; 94 Ala. 55, 10 South. 522; 113 Ala. 7, 21 South. 378; 145 Ala. 20, 40 South. 957; 161 Ala. 58, 50 South. 59; 120 Ala. 23, 24 South. 408; 119 Ala. 12, 24 South. 453; 179 Ala. 9, 60 South. 842. There was no error in the refused charges. 18 Ala. 720; 144 Ala. 125, 39 South. 251; 106 Ala. 18, 17 South. 333; 142 Ala. 287, 38 South. 268; section 7086, Code 1907.

The Attorney General of the United States filed a brief as amicus curiæ.

McCLELLAN, J. The appellant, Caldwell, stands convicted of murder in the first degree. The death sentence was imposed. Cecil Linton, a street car conductor, then in service, was the victim. The tragedy occurred on December 15, 1918. The appellant used a pistol, firing but two shots, one of which killed Linton and the other seriously wounded Morrison, the motorman of the street car. An outline of the event will suffice for present purposes. The appellant had entered the car as a passenger; an altercation between him and Conductor Linton ensued; the motorman Morrison, went to the assistance of the conductor, and forcibly ejected appellant from the car; from without the car, on the ground, the appellant, drawing a theretofore concealed pistol, shot Linton and Morrison, they being at the time on the rear platform of the car; whereupon the appellant fled from the scene and was, later, during the evening of that day, taken into custody.

[1] On the next day, December 16, 1918— which was during the term of the circuit court beginning, theretofore, in July, 1918, and to terminate by operation of law a few days thereafter (Gen. Acts 1915, pp. 707, 708) —the court entered an order directing reconvention of the grand jury on December 19, 1918. This grand jury had been organized by the court on September 2, 1918, with 18 members. It had made, on September 7, 1918, a written report, wherein the grand jury asked "to be discharged." The indictment upon which the appellant was tried was returned by this body—15 appearing in obedience to the order of reconvention—on the afternoon of December 19, 1918. Fifteen persons are a sufficient number to constitute a legal grand jury, if, of course, the body is otherwise competent. With interims not important to be now defined, the circuit courts are assigned two consecutive terms, during each calendar year; and for each term at least one grand jury, in counties of the population of Calhoun, is required to be impaneled. Gen. Acts 1915, p. 812, § 13; Gen. Acts 1909, p. 312, § 18. The grand juries so impaneled are such "for that term of the court," unless dissolved by order of the court. A grand jury, being a part of the court, can only be dissolved by operation of law or order of the court served by it. 20 Cyc. p. 1333; Clem v. State, 33 Ind. 418; In re Gannon, 69 Cal. 541, 11 Pac. 240. A grand jury once regularly impaneled is, nothing to the contrary being shown, presumed to continue until dissolved by operation of law or order of the court. State v. Winebrenner, 67 Iowa, 230, 25 N. W. 146; 20 Cyc. pp. 1032, 1033.

[2] Since there is no record evidence, by which alone may such court action be shown, that the grand jury returning the indictment against appellant had been dissolved by order of the court previous to its reassembly, there is no merit in the appellant's several contentions that the indictment was preferred by a grand jury not authorized by law. The request made in the September, 1918, report of the grand jury that it be discharged is no evidence that the "court" dissolved the grand jury. That request but expressed the desire of the grand jury, not the action of the court essential to the dissolution of the grand jury which was impaneled to serve during the term ending subsequent to the return of the indictment against the appellant, unless dissolved by efficient order of the court.

[3] On January 6, 1919, an order was entered convening "a special jury session of the circuit court of Calhoun county." This order was made on the first day of the 1919 half-year term of the circuit court. Gen. Acts 1915, pp. 707, 708. Section 2 of the act just cited provides:

"That the causes on the dockets for trial shall be called peremptorily at the times fixed by law *and at such other times* as may be fixed by order of circuit judge; * * * and the cases against prisoners shall be called as many more times as may be necessary to secure *prompt trials.*" (Italics supplied.)

This authorization and direction entirely justified the action of the court in entering the order which, as appears from its terms, was designed to equip the court with juries to serve the purposes contemplated by law as expressed in the quotation from the second section of the act of 1915.

[4] This order also recited that—

"All cases pending in said court and at issue be triable at said special jury session of said court."

It is insisted for appellant that, since his case was not at issue on January 6, 1919, the date the order was made, his trial was premature; he being arraigned and pleading not guilty on January 10, 1919. The words "at issue" in the order did not introduce any binding limitation upon the power of the court—consonant with the law-enjoined duty to afford "prompt trials" of prisoners—to proceed, during the term, with the trial of any case, civil or criminal, that was at issue then or was thereafter put at issue. The order does not provide for the trial of cases now (on January 6, 1919) "at issue."

[5, 6] The power and authority of the court to control the business of the court—to determine what cases should be tried that were legally triable during the term, of which this prosecution was one—was plenary under our statutes; and, even if the words "at issue" should be read as only stipulating for the trial of cases now (on January 6, 1919) "at issue," the court was empowered to disregard the effect of the stipulation and proceed to the trial of any cases on the docket that might have been triable during the term, if the stipulation had not been made in the order, a stipulation that the court might have properly omitted. There is, hence, no merit in the contention that the petit juries, later going to constitute in part the special venire to try this appellant, were drawn and ordered summoned without authority of law. The provision of the General Act of 1909, § 15, p. 311, with reference to the drawing of juries for the next term of the court at least 20 days before the beginning of that term, and providing a remedy for the failure of the judge to do so, is declared, by section 29 of the act (page 317), to be directory merely, not mandatory; and it is further provided that the time at which the jurors are drawn shall not affect the legality of the body of jurors thus brought into being. Parris v. State, 175 Ala. 1, 6, 57 South. 857.

[7, 8] With respect to the failure of the sheriff to indorse the date of his return upon the process which authorized him to summon the regular jurors for the week of the court during which the appellant's case was set for trial will not authorize the presumption that it was prematurely made, without summoning all the jurors so drawn and listed on the process delivered to him. The return of the sheriff affirms that all the persons named on the list were served except one whose name was given. It is to be presumed, in the absence of any showing to the contrary, that the duty of the sheriff to summon the persons named on the list was efficiently discharged, and that the failure to serve the person not served was not attributable to a breach of duty on the part of the sheriff. Furthermore, it is the express provision of the jury law of 1909 (General Acts, p. 320, § 32) that the failure of the sheriff "to summon any of the jurors drawn, or any juror summoned fail or refuse to attend the trial, or there is any mistake in the name of any juror drawn or summoned, none nor all of these grounds shall be sufficient to quash the venire or continue the cause. * * *" The court was within the exercise of its legal power in excusing the juror Ayers for cause regarded as sufficient by the court. Thomas' Case, 124 Ala. 48, 27 South. 315; Plant's Case, 140 Ala. 52, 37 South. 159; Acts 1909, pp. 319, 320. The exception to the action of the court in deciding, over the objection of the appellant, that the juror Stovall was qualified to serve upon the panel, is not sustained by the record; it not appearing that the objection was grounded upon any fact that would have justified the court in determining to the contrary.

[9-12] The homicide was committed on December 15, 1918. The indictment was returned by a competent grand jury on December 19, 1918. The appellant was arraigned on January 10, 1919; and his trial set for January 17, 1919. After the state had announced ready for trial, the defendant, appellant, moved for a continuance on the ground that the case was "placed too early for the defendant to properly prepare for trial, and on the further ground that there is a witness, a soldier, who was with defendant at the time of the shooting and who was an eyewitness, whom the defendant has not yet been able to locate, but who may be at the camp here now." The court overruled this motion for a continuance. It cannot be affirmed of the showing thus made, indicated by the grounds quoted, that the court abused, in any degree, its legal discretion with reference to the granting or refusing of continuance in cases called for trial. A further motion for a continuance of the case was made "on account of the absence of the witness Nathaniel J. Phillips." This motion was overruled; but the court allowed the defendant to make a show-

ing for the witness Phillips, and it was admitted on the trial. Error cannot be predicated upon the action of the court in refusing a continuance on this account. During the examination of the motorman, Morrison, who was shot at the time the conductor was killed, the state was permitted, over the objection of the appellant, to show the jury where he was shot. This was of the res gestæ of the event under investigation, and the exhibition of the place where the motorman was shot was properly permitted. The prosecution, on redirect examination of the witness Yeargin, was permitted, over appellant's objection, to state the position in which the appellant held the pistol at the time he did the shooting. This matter involved no impropriety; and, besides, no ground of objection to the question propounded was given.

[13, 14] Trial courts are invested with a wide discretion in permitting examinations in rebuttal of evidence theretofore given in the cause. There is not merit in the criticisms, on this account, of the action of the court in the premises. All questions propóunded to the witnesses that were designed to fully develop the circumstances attendant upon the shooting of Linton by the appellant, including the action of the motorman, the conductor, and the appellant on this occasion, were properly allowed. It is unnecessary to recite questions falling within this category, to which the appellant interposed objections, in some instances without stating any grounds.

[15, 16] The appellant was a soldier, in the service of the United States, at the time Linton was killed. The identity of the person who shot the conductor being at the time uncertain, it was competent for the state to adduce evidence tending to show that the man who did the shooting wore a so-called "sharpshooter's" medal, and that there was another mark of identification on his uniform. It was likewise competent for the prosecution to show what the appellant said, when in custody, with reference to his possession of a sharpshooter's medal and his explanation of how he had lost it in his flight. On the cross-examination of the witness Leonard, the prosecution propounded a question intended to elicit the answer that the appellant followed the conductor in his movement through the street car. The appellant objected to the question on the ground of its irrelevancy and that it called for the conclusion of the witness. The court overruled the objection. In his answer the witness said that he did not know, which one followed the other, thus disclosing that the point of the objection was averted by the answer of the witness.

Every ruling of the court on the admission or rejection of evidence has been carefully considered, and on none of them can a finding of error be predicated.

[17] The oral charge of the court was a full and fair statement of the law applicable to the facts presented to the jury. At the instance of the appellant, the court gave 42 of his special requests for instructions. The court refused 20 of appellant's special requests for instructions. A number of those refused to the defendant (appellant) were substantially covered by the oral charge of the court and by special charges given at his instance. It is not error to refuse special requests for instructions that would state to the jury the same proposition, substantially, that had been theretofore given. Gen. Acts 1915, p. 815.

[18] The appellant reserved an exception to this part of the oral charge of the court:

"The law presumes malice from the use of a deadly weapon; that is, malice may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts that presumption of malice. If the killing is produced by a deadly weapon, such as a pistol, the law authorizes the jury to presume malice from the killing, unless the evidence which proves the killing shows also that it was done without malice."

This expression of the court was in accord with the long-established rule prevailing in this jurisdiction. Hornsby v. State, 94 Ala. 55, 66, 10 South. 522; Mitchell v. State, 129 Ala. 23, 38, 30 South. 348. The undisputed evidence went to show that the shooting of the conductor was intentionally done with a deadly weapon.

[19] Another exception to the oral charge of the court brings into question the following statement:

"Premeditation and deliberation here does not mean that the man slayer must ponder over the killing for a long time. It does not mean that he must sit down and reflect over it or think over it for an appreciable length of time; but it may exist and may be entertained while the man slayer is pressing the trigger of the pistol that fired the fatal shot. If it does exist before and while he is pressing the trigger that fired the fatal shot. even if it be only for a moment or instant of time, it is the premeditation and deliberation as used as an element of murder in the first degree."

The doctrine thus announced is in entire accord with that illustrated in Daughdrill v. State, 113 Ala. 7, 31, 32, 21 South. 378; Hornsby v. State, supra; and many other decisions in that line.

[20] In its oral charge the court instructed the jury as follows:

"If the killing was malicious, even if it was done in the heat of passion, it is murder. Even if a killing is done in the sudden heat of passion excited by sufficient provocation, such as a blow, if there is malice in it, and if there is also the premeditation and deliberation, as I have defined it to you, then it would be murder in the first degree."

This expression of the law was accurate and has been often approved. Smith v. State, 145 Ala. 17, 23, 40 South. 957, treating charge 7; Martin v. State, 119 Ala. 1, 6, 25 South. 255; Hornsby v. State, supra; Williams v. State, 161 Ala. 52, 58, 50 South. 59.

[21] As applied to the evidence in this case, the following excepted-to excerpt from the oral charge of the court was a correct statement of the law under the authority of Nabors v. State, 120 Ala. 323, 25 South. 529; Holley v. State, 75 Ala. 14, viz.:

"He had no right to take the life of Cecil Linton unless a necessity to take his life existed at the time he did take it (if you believe from the evidence beyond a reasonable doubt that he fired the fatal shot), or unless there was apparent necessity to take the life of Cecil Linton. The law requires that there must have been real danger; that he must have been in danger of suffering serious bodily harm or death, or the appearances of danger must have been such as to have created or produced in the mind of a reasonable man the honest belief that there was danger to his life, or that he was about to suffer death, or serious bodily harm."

[22] The next exception to a part of the oral charge of the court touching the same subject in the court's mind in the last-mentioned quotation from the oral charge falls within the same established principles and was free from error. In respect of the next excepted-to statement in the oral charge, appellant's counsel insists that the doctrine established in this state and repeated to the jury in this case did not have application in the present circumstances because the defendant was a soldier, wearing a uniform, and who was taught by the military authorities that an American soldier should never retreat. There is no merit, of course, in this effort to discriminate in such circumstances the application of the established law, in civil courts, to offenders, whether they be soldiers in uniform or not. In civil courts all offenders must be accorded the benefit of and held responsible under the same law.

No error affected the instruction of the jury through the oral charge of the court. It is unnecessary to repeat, seriatim, the subjects of further excepted-to excerpts from the oral charge of the court. They have each been carefully considered; and from this consideration it is manifest that, in so far as the oral charge of the court is concerned, the appellant was accorded a fair statement of the law applicable to his case, and no admonition that would contribute to a just conclusion as between the state and the defendant was omitted or even carelessly stated.

[23] In respect of the refused charges touching the measure of proof necessary to a verdict of conviction, the record abounds in efficient statements of it; and no error intervened because of the refusal of special requests touching the same subject. In the brief for appellant special requests 5, 6, 10, 11, 12, 17, 19, and 20, refused to the defendant, are treated together. The defendant pressed the theory that sought to avail of the principles that operate to reduce the grade of a homicide when the killing is traceable to an act done in sudden anger or the heat of blood, upon adequate provocation. In Martin v. State, 119 Ala. 6, 25 South. 257, it was said:

"Homicide may be committed in the heat of passion suddenly aroused by a blow, and yet be done maliciously. Suddenly aroused passion and malice may coexist, and both cause the act. When this is the case, the homicide, otherwise indefensible murder, is not reduced to manslaughter by reason of the passion."

Hence it is always held that requests for instruction touching this particular phase of the law of homicide must exclude the coexistence of malice with a sudden passion or heat of blood where the defendant would reduce the grade of his offense. It is true that this court, in Martin's Case, interpreted charge 20, of which charge 17, refused to this appellant, is a substantial duplicate, as excluding, by its terms, the coexistence of malice with sudden passion under which the defendant acted; but in the more recent decision in Davis v. State, 188 Ala. 59, 70, 66 South. 67 (treating refused charge 33), a different interpretation was given this character of instruction, and its refusal by the trial court was justified. The ruling in Davis v. State was better grounded and is, hence, reaffirmed.

[24] But, in any event, if charges 17 and 20 are interpreted as they were interpreted in the Martin Case, supra—as excluding the existence of malice in the act consequent upon sudden passion—then their substance was otherwise given to the jury by the court. In the oral charge of the court the evidence of defendant's good character was given adequate and accurate consideration. The appellant's request numbered 9, touching this subject, was sufficiently covered by the court in this feature of its oral charge. It has been long settled in this state that words of reproach, however grievous, are not a provocation sufficient to free a party taking life from the charge of murder; an assault being necessary in the premises. Felix's Case, 18 Ala. 720.

Charge numbered 12, refused to the appellant (defendant), was faulty in several respects under the evidence in this case. It will suffice to note that it, along with others, did not exclude, in its hypothesis, the coexistence of malice with the passion the charge recites.

There is no error in the record, and the judgment of conviction must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SAYRE, SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

## On Rehearing.

McCLELLAN, J. [25] The full membership of the court has accorded this record and the application for rehearing, with its accompanying briefs, the thorough consideration the importance of the cause demands. After such scrutiny, the court remains convinced that appellant was given a fair and impartial trial in the court below, under the law long established and repeatedly observed in this state. From the evidence it is plain that the guilt of this defendant, under an indictment legally preferred, was a question for the jury. If he was found to be the guilty agent, the degree of his crime—whether murder in the first degree, murder in the second degree, or manslaughter in the first degree—was, under the evidence, a question for the jury, not the court, to decide. The trial court lucidly and correctly defined these degrees of homicide under the laws of Alabama, and left to the jury the determination of the degree of homicide of which this defendant was charged to be guilty. There was evidence before the jury, open to their acceptance, authorizing these conclusions: That the defendant, without provocation or justification, abused and assaulted the conductor; that the conductor was a man inferior physically to the defendant; that this assault forced the conductor through a glass window, injuring him; that the motorman came from the front to the rear of the car to the assistance of the conductor, who was being then and there assaulted by the defendant; that the motorman had no weapon or other instrument when, on reaching the men, he struck the defendant and forcibly ejected him from the car; that neither the conductor nor the motorman left the car; that, when the defendant was on the ground opposite the entry to the rear platform, the conductor (who was killed) was then making no demonstration of any kind; that just before the shooting the motorman was standing on the car platform, facing the defendant (who was then on the ground), with his body braced and foot raised to kick the defendant if he attempted to re-enter the car; that neither the motorman nor the conductor was advancing upon or otherwise menacing the defendant just before or when he fired the shots; and that, at this stage, the defendant drew from the breast of his clothing a pistol, theretofore concealed, and shot twice, felling both men, and killing the conductor and seriously wounding the motor-

man. There was evidence to the contrary of that inviting the stated conclusions, but such evidence was not conclusive; would not have justified the court in declaring, as a matter of law, that defendant either was or was not, under the whole evidence, guilty of first or second degree murder or manslaughter. Under the familiar rules of law prevailing in Alabama, and the whole evidence in this record, the guilt or innocence of the defendant and, if guilty, the grade of his crime, were so obviously issues of fact to be determined by the jury, not by the court, that no reasonable contention could be made that the trial court erred in not withdrawing from the jury any element of these several issues or in enforcing the view that the defendant could only have been guilty of manslaughter. Whatever may be the rule in other jurisdictions, the trial court well observed the pertinent rules of law always prevailing, with respect to such matters, in this state.

[26] By the amendatory act, approved September 22, 1915 (Gen. Acts, p. 722), review may now be had on appeal of the action of trial courts in overruling a motion for new trial in a criminal case. The granting of review of this action on a motion in a criminal case—introduced by amendment into the statute according a like right in a civil cause —subjects the review in a criminal case to the same considerations upon which this court has proceeded in like circumstances in a civil case, the rule being stated in Cobb v. Malone, 92 Ala. 630, 9 South. 738, and since repeated in numerous instances. In such circumstances, where the trial court hears the witnesses and this court is not so favored, the action of the trial court—unchanged by the statute—in overruling a motion for new trial, asserting the grounds that the evidence is insufficient to support the verdict or that the verdict is contrary to the evidence, will not be reversed on appeal "unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cole v. A. G. S. R. Co., 201 Ala. 193, 77 South. 719; Hackett v. Cash, 196 Ala. 403, 72 South. 52; Finney v. Studebaker, 196 Ala. 422, 72 South. 54, among others. It is clear from the evidence in the present record that this court cannot affirm that the trial court erred in overruling the motion for new trial, either because of the insufficiency of the evidence to support the verdict or because the evidence only warranted a conviction of the lesser degree of homicide. It was, as indicated, open to the jury to credit that part of the evidence which, being accepted, authorized the jury to find the defendant guilty of murder in the first degree.

[27] At the instance of the defendant the court gave these special instructions touching "heat of passion":

"(18) The court charges the jury that if they believe from all the evidence that the killing of the deceased was not malicious and was not premeditated, but that it was the result of the heat of passion caused by a blow, reasonably engendered at the time of the difficulty, the defendant could not be convicted of murder in either degree."

"(20) The court charges the jury that if they believe from the evidence that the killing in this case resulted from the heat of passion, engendered in the defendant by the blow struck him by the deceased at the time of the fatal difficulty, and that the killing resulted solely from anger or heat of passion so engendered, the defendant cannot be convicted of murder, but of manslaughter, at the most."

[28] These instructions, as well as the oral charge defining manslaughter, accorded the defendant the benefit of the long-settled law of this state touching that subject. There was positive evidence, as well as circumstances, open to the jury's acceptance over evidence to the contrary, referable to this feature of the case, that went to show, not only that defendant provoked the difficulty on the car and assaulted the conductor without justification or excuse, but that, from a position outside the car, in which he was not menaced in any degree, the defendant deliberately drew his pistol, theretofore concealed, and shot the conductor and the motorman. Code, § 7086, which provides:

"When the killing in any sudden rencounter or affray is caused by the assailant by the use of a deadly weapon, which was concealed before the commencement of the fight, his adversary having no deadly weapon drawn, such killing is murder in the second degree, and may, according to the circumstances, be murder in the first degree."

[29] The ground of the motion for new trial averring that the public mind was inflamed against defendant because of his race (negro), through newspaper articles, was not at all sustained. It does not appear that any member of the jury saw or read the newspaper articles. In instructing the jury, the court correctly advised as follows:

"The defendant has a right to a fair and impartial trial; he is entitled to that, and nothing short of that should be given him. You give the evidence in the case your earnest, your impartial consideration, and, if he is not guilty, acquit him. No prejudice should influence you one way or the other; no prejudice against his race, no prejudice against him, and sympathy for the dead man, should influence your verdict or should affect you in making up your minds in this case. You are here to try it on the evidence and apply to the evidence the cold reason and the law as I have given it to you and say what is the truth about this matter, without being influenced by anything on the outside of what has actually been given you from the witness stand and by the court.

"On the other hand, the state of Alabama and its citizens have rights, and their rights should be respected in making up your verdict in the case. If the defendant is guilty of any degree of unlawful homicide, it is just as much your duty to the state of Alabama to convict him of that degree of which he is guilty as it is to acquit the defendant if he is not guilty."

No motion for a change of venue was made.

On the original hearing no consideration was given the appellant's motion to strike the matter set out in the bill of exceptions by the trial judge reciting the directions given by him when this grand jury made its report in September, 1918; this for the obvious reason that this court concluded, wholly independently of the mentioned recital, that the grand jury had not been dissolved or discharged, and that its reconvention was legally accomplished.

[30] The insistence that section 13 of the Act of 1915 (Gen. Acts, p. 812) is without the "title" of that act and is, hence, invalid, cannot be approved. The title of the act comprehends the subject-matter of section 13.

[31] Other questions decided in the original opinion, and reargued on rehearing, have been re-examined in the light of the briefs filed in support of the application for rehearing. The court is not convinced that a mistake as to them has been made. To state abstractly what is argued in the concrete: It is further insisted that the doctrine of "retreat" is not applicable to a passenger on a street railway who is assaulted by the carrier's servant whose duty it is to conserve and preserve the passenger's safety; the argument being that apt analogy is afforded by the rule that exempts one assaulted in his place of residence, etc., from the duty to "retreat" before his assailant. The analogy asserted is not good. One on his own premises is regarded as being in his place of refuge. Lee's Case, 92 Ala. 15, 9 South. 407, 25 Am. St. Rep. 17; Watts' Case, 177 Ala. 24, 59 South. 270. Not so with a passenger on a carrier's line. The stated duty the carrier owes to its passenger, but that is an entirely different matter from the law's motive in requiring, in proper cases, one assailed to observe the law-defined duty to retreat before he takes life or inflicts serious bodily harm. The law's motive in requiring retreat is conservative and preservative of human life. This motive is as operative on the vehicles of carriers as it is elsewhere.

A full review on rehearing discloses no error in the record. The application must be denied.

Rehearing overruled.

All the Justices concur.