The defendant was indicted and convicted for the first degree murder of her husband, Ray Sanders. Sentence was life imprisonment as required by Alabama Code 1975, Section 13-1-74.
 I
The major issue presented by this appeal is the sufficiency of the evidence to sustain and support the conviction. The defendant contends that a first degree murder was not shown and was not proved by either the facts or the evidence in this case. Specifically, the defendant contends that there was no evidence of deliberation, premeditation, willfulness or malice.
The evidence presented by the State reveals that Ray Sanders was killed by a single shotgun blast to the chest on the night of November 26, 1979, at his home.
When thirteen year old Robert Sanders went to bed that evening, the only other people in the house were his mother and his father. Robert's mother, the defendant, had been drinking "a lot". Mr. Sanders and the defendant had had an argument that evening over some long distance telephone calls made by the defendant. Robert testified that he heard his father say that "if he wasn't dead in the morning, he was going to have that telephone took out and took into town."
Later, Robert went to bed but was awakened by the defendant who was calling his name and crying. Robert got up, went into the living room and saw the defendant sitting down beside his father, crying. His father had been shot. Ray Sanders' shotgun was behind the front door where it was usually kept. There was no one else in the house and Robert had not heard any shot.
The police arrived within a short time. Robert stated that if his mother called the police she must have done it before he got up because he did not remember her using the telephone after she awakened him.
A paraffin test of the hands of the defendant for the presence of gunpowder residue was inconclusive. A blood alcohol analysis of the defendant's blood conducted approximately one and one-half hours after the approximate time of the shooting revealed an alcohol level of .23.
No buckshot was found anywhere in the room where the deceased was shot indicating that all the shot entered the deceased.
The defendant voluntarily gave a statement to the investigating officers in which she claimed that a young black forced his way into her house looking for her husband. She grabbed the shotgun from behind the *Page 1282 
door and pointed it at the man who pulled it away from her — cutting her hand and cocking the shotgun in the process. The man then pushed the defendant out of the way and "let Ray have it." "The black man was standing by the corner of the living room hall by the heater when he did it and Ray was still laying down asleep with his head facing the t.v."
Detective Keith Kolander was in charge of the investigation. He testified that the information the defendant gave him was inconsistent with what his investigation revealed: "(W)hat Mrs. Sanders told me in the statement was different from what the toxicologist told me as far as the entrance wounds on the body." The toxicologist told him that it "couldn't have happened that way."
The toxicologist's report indicated that it was "a straight-in shot." The toxicologist testified that his findings were inconsistent with the statement given by the defendant.
An examination of the shotgun revealed that it was a single shot 16-gauge shotgun. The shell in the weapon would not properly eject and had to be removed by "jamming it out from the other end with a bar." The results of tests revealed that the shotgun had to have been fired somewhere from two to five feet from Mr. Sanders.
The fact that the toxicologist could not positively testify when the shotgun was last fired and that the pellets found in the body of Ray Sanders were fired from that same shotgun are not significant in view of the fact that the defendant, in her written statement, admitted that it was the murder weapon. At trial, this was never a disputed fact.
No alcohol was found in the blood of the deceased.
The essential elements of murder in the first degree are that the killing must have been willful, deliberate, premeditated and malicious. Cosby v. State, 269 Ala. 501, 114 So.2d 250
(1959).
A positive intent to kill is an essential element of murder in the first degree. Jackson v. State, 239 Ala. 38, 193 So. 417
(1940). "Premeditation" and "deliberation" are synonymous terms, which, as elements of first degree murder, mean simply that the accused, before he committed the fatal act, intended that he would commit the act at the time that he did, and that death would be the result of the act. White v. State, 236 Ala. 124,181 So. 109 (1938); Dunn v. State, 143 Ala. 67, 39 So. 147
(1905). Malice, as the term is used in defining murder, is the intent to take human life without legal excuse, justification or mitigation. Walker v. State, 339 So.2d 155 (Ala.Cr.App. 1976). These elements or mental states do not require reflection for any appreciable length of time, but are sufficient if they co-exist only for a moment at the instant of time the slayer is pressing the trigger to fire the fatal shot.Caldwell v. State, 203 Ala. 412, 84 So. 272 (1919); Miller v.State, 54 Ala. 155 (1875). All of these qualities may be grouped under the phrase "formed design" and if this formed design existed in the mind of the defendant for but one moment before the homicide, that, in law, would be sufficient. Seamsv. State, 84 Ala. 410, 4 So. 521 (1887).
Each of the elements of first degree murder need not be proved by direct, positive and independent evidence but may be established by circumstantial evidence. Hall v. State, 40 Ala. 698
(1867); Dolvin v. State, Ala. 391 So.2d 133 (1980); Cumbov. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979); Tooson v. State, 56 Ala. App. 613,324 So.2d 327, cert. denied, 295 Ala. 426, 324 So.2d 333 (1975).
Each of these elements may be proven from the circumstances surrounding the killing. Where a party without necessity kills another with a deadly weapon, under the law, in the absence of proof to show that it was accidental, the implication is that the act was voluntarily done. Oliver v. State, 17 Ala. 587
(1850).
 "Deliberation and premeditation, intent to kill, and other elements of murder in the first degree may be shown, like other facts, either by direct proof, or by circumstances from which there existence may *Page 1283 
be inferred. No rule can be laid down as to the character or amount of proof necessary to show deliberation and premeditation; each case must depend upon its own facts. A premeditated design to kill may be inferred from the facts. And that a malicious killing was murder in the first degree may be shown by circumstantial evidence. The question is one for the jury to determine upon a consideration of all the surrounding circumstances tending to show the relations of the parties to each other, and the animus of the accused toward the deceased. Premeditation or other elements of murder in the first degree will not be inferred, however, from the bare fact of killing. Their existence may be inferred from the circumstances, but not presumed; in this sense the words `inferred' and `presumed' are not synonymous. Intent to kill and other characteristics of murder in the first degree are matters of fact which cannot be implied as matters of law, but may be inferred from the nature of the weapon used, or from acts of malice which, in the usual course of things, would cause death, or great bodily harm. And in arriving at the intention regard should be had to what transpired at the time of the killing, as well as to what transpired before and after that time."
 F. Wharton, The Law of Homicide, Section 150 (3rd ed. 1907).
The existence of the necessary elements of murder in the first degree may be inferred from the circumstances and character of the act of killing itself, in the absence of surrounding circumstances clearly repelling the idea.
 "Where the intent to kill appears from the circumstances preceding or connected with the homicide there can be no question of implied malice. And it has been held that an act the natural consequence of which is death, when unexplained, is evidence in itself of the preconceived intention and deliberation necessary to constitute murder in the first degree."
Wharton, Section 151.
The deliberate use of a deadly weapon may create an inference of first degree murder.
 "The unjustifiable, intentional, and deliberate use of a deadly weapon, or a use of such weapon from which death would be liable to result, gives rise to an inference of the deliberate and premeditated intent to take life necessary to make a resultant killing murder in the first degree. And this is so notwithstanding the fact that no motive appears; and the necessity rests with the slayer of showing extenuating circumstances. But the use of the deadly weapon must have been deliberate; the mere use, with nothing more, raises an inference of malice only; to raise an inference of premeditation, deliberation and premeditation must appear in the manner of the use."
Wharton, Section 152.
These propositions are supported by Alabama law. See also Brownv. State, 142 Ala. 287, 38 So. 268 (1904); Kemp v. State,278 Ala. 637, 179 So.2d 762 (1965); Coates v. State, 253 Ala. 290,45 So.2d 35 (1950); Ex parte Bayne, 375 So.2d 1239 (Ala. 1979);Hardin v. State, 344 So.2d 234 (Ala.Cr.App. 1977); Brown v.State, 109 Ala. 70, 20 So. 103 (1896).
In reviewing the facts and the legitimate inferences arising therefrom, we find that there was sufficient evidence from which the jury could have excluded every reasonable hypothesis except that of guilty beyond a reasonable doubt. Cumbo, supra. In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. We must consider the evidence in the light most favorable to the prosecution. Johnson v. State,378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173
(Ala. 1979).
The jury was authorized to consider the relationship of the defendant and the deceased and the existing state of that relationship as shown by the statement made by the deceased and their recent argument. Reeves v. State, 201 Ala. 45, 77 So. 339
(1817); Padgett v. State, 49 Ala. App. 130, 269 So.2d 147, cert. denied, 289 Ala. 749, *Page 1284 269 So.2d 154 (1972). The jury was also authorized in finding that the defendant gave a false statement or explanation of the homicide, as proof of circumstantial evidence inconsistent with statements of the accused may show the falseness of the defendant's statements. O. Warren, 3 Homicide, Section 275 (1938). The jury would be justified in concluding that the defendant returned the shotgun to its usual location after shooting her husband and that she called the police before waking her son — facts that could support a finding that the defendant acted with deliberation.
In conclusion, after a careful review of all the evidence, we find that the question of whether the defendant was guilty of first degree murder was an issue which only the jury was authorized to make. We will not disturb their verdict.
 II
Although the defendant argues that her motion for new trial on the ground of newly discovered evidence should have been granted, it is without dispute that the existence of this "newly discovered evidence" was first discovered by the defendant or her counsel early in the trial and was available for the defendant's use in the presentation of her case. For this reason, the motion for new trial was properly denied.Jarrell v. State, 355 So.2d 747 (Ala.Cr.App. 1978).
We have carefully searched the record for error prejudicial to the defendant and finding none affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.